338 So.2d 819 (1976)
Charles H. WEBER, As Citizen, Taxpayer, and Elector of the State of Florida, Appellant,
v.
Bruce A. SMATHERS, As Secretary of State of the State of Florida, and the Sunshine Amendment, Inc., Intervenor, Appellees.
No. 50327.
Supreme Court of Florida.
October 11, 1976.
*820 Hugh M. Taylor, Quincy, of Bryant, Dickens, Franson & Miller, Tallahassee, for appellant.
Robert L. Shevin, Atty. Gen., James D. Whisenand, Deputy Atty. Gen., William C. Sherrill, Jr., Asst. Atty. Gen., Tallahassee, and Donald M. Middlebrooks, Gen. Counsel, Orlando, for appellee.
John E. Mathews, Jr., and Jack W. Shaw, Jr., of Mathews, Osborne, Ehrlich, McNatt, Gobelman & Cobb, Jacksonville, for intervenor.
OVERTON, Chief Justice.
This cause is before us on appeal from a circuit court order of dismissal with prejudice that directly construed provisions of the Florida Constitution. We have jurisdiction.[1]
On July 29, 1976, appellee/defendant Bruce Smathers, Secretary of State, certified that enough electors had signed a petition to place on the ballot for the upcoming general election the following proposed amendment to the Florida Constitution:
"Article II, Section 8 is created to read:
"Ethics in Government  A public office is a public trust. The people shall have the right to secure and sustain that trust against abuse. To assure this right:
"(a) All elected constitutional officers and candidates for such offices and, as may be determined by law, other public officers, candidates, and employees shall file full and public disclosure of their financial interest.
"(b) All elected public officers and candidates for such offices shall file full and public disclosure of their campaign finances.
"(c) Any public officer or employee who breaches the public trust for private gain and any person or entity inducing such breach shall be liable to the state for all financial benefits obtained by such actions. The manner of recovery and additional damages may be provided by law.
"(d) Any public officer or employee who is convicted of a felony involving a breach of public trust shall be subject to forfeiture of rights and privileges under a public retirement system or pension plan in such manner as may be provided by law.
"(e) No member of the legislature or statewide elected officer shall personally represent another person or entity for compensation before the government body or agency of which the individual was an officer or member for a period of two years following vacation of office. No member of the legislature shall personally represent another person or entity for compensation during term of office before any state agency other than judicial tribunals. Similar restrictions on other public officers and employees may be established by law.
"(f) There shall be an independent commission to conduct investigations and *821 make public reports on all complaints concerning breach of public trust by public officers or employees not within the jurisdiction of the judicial qualifications commission.
"(g) This section shall not be construed to limit disclosures and prohibitions which may be established by law to preserve the public trust and avoid conflicts between public duties and private interests.
"(h) Schedule  On the effective date of this amendment and until changed by law:
"(1) Full and public disclosure of financial interests shall mean filing with the secretary of state by July 1 of each year a sworn statement showing net worth and identifying each asset and liability in excess of $1,000 and its value together with one of the following:
"a. A copy of the person's most recent federal income tax return; or
"b. A sworn statement which identifies each separate source and amount of income which exceeds $1,000. The forms for such source disclosure and the rules under which they are to be filed shall be prescribed by the independent commission established in subsection (f), and such rules shall include disclosure of secondary sources of income.
"(2) Persons holding statewide elective offices shall also file disclosure of their financial interests pursuant to subsection (h)(1).
"(3) The independent commission provided for in subsection (f) shall mean the Florida Commission of Ethics."
Appellant/plaintiff Charles S. Weber on September 23, 1976, filed suit to enjoin appellee Smathers from doing the administrative acts necessary to put the Sunshine Amendment before the people for their approval or rejection. It was dismissed with prejudice. Appellant appeals and contends that the proposed amendment violates Article XI, Section 3, of the Florida Constitution, because it embraces more than one subject. He further contends it violates Article XI, Sections 3 and 5, because it attempts to revise several articles other than the one it purportedly amends. Finally, appellant contends the appellee violated Section 101.161, Florida Statutes, when he approved the wording of the substance of the amendment that it is to appear on the ballots.
This Court has been presented, on a number of previous occasions, with the critical decision of determining whether a constitutional amendment may be properly placed on the ballot.[2] Previous decisions of this Court have removed amendments from the ballot,[3] but we have historically declined to interfere with the right of the people to vote upon a proposed constitutional amendment absent a showing in the record that the proposal is "clearly and conclusively defective." Goldner v. Adams, 167 So.2d 575 (Fla. 1964). We must keep in mind the words of Mr. Justice Terrell in Gray v. Golden, 89 So.2d 785, 790 (Fla. 1956), wherein he stated:
"... [W]e are dealing with a constitutional democracy in which sovereignty resides in the people. It is their Constitution that we are construing. They have a right to change, abrogate or modify it in any manner they see fit so long as they keep within the confines of the Federal Constitution. The legislature which approved and submitted the proposed amendment took the same oath to protect and defend the Constitution that we did and our first duty is to uphold their action if there is any reasonable theory under which it can be done. This is the first rule we are required to observe *822 when considering acts of the legislature and it is even more impelling when considering a proposed constitutional amendment which goes to the people for their approval or disapproval... ."
There is no showing by the appellant Weber that the instant amendment is clearly and conclusively defective. Neither the wisdom of the provision nor the quality of its draftsmanship is a matter for our review.[4]
It is contended by the appellant that Adams v. Gunter, 238 So.2d 824 (Fla. 1970), which expressly required the amendment of thirty-three other constitutional sections, and Rivera-Cruz v. Gray, 104 So.2d 501 (Fla. 1958), which involved a "daisy chain" of fourteen interdependent amendments, apply and are controlling in the instant case. We disagree. The proposed amendment is sufficiently complete within itself, requiring no other amendment to effect its purpose.
We hold the provisions of the proposed amendment are sufficiently related to withstand an attack that they embrace more than one subject. Further, the proposed amendment, if adopted, will not conflict with other articles and sections of the Constitution, and the wording that is to appear on the ballot is legally adequate.
The order of the trial court is affirmed. In view of the emergency nature of this proceeding, rehearing is dispensed with.
It is so ordered.
ADKINS, BOYD and HATCHETT, JJ., concur.
ENGLAND, J., concurs with opinion in which ADKINS and SUNDBERG, JJ., concur.
ROBERTS, J., dissents with opinion.
ENGLAND, Justice (concurring).
The language which is pivotal to our decision in this case, reciting that an amendment or revision of the Constitution by initiative "shall embrace but one subject"[1], obviously means different things to different, reasonable people. Appellants view it narrowly and suggest that the proposed amendment embraces at least five "subjects" ranging from financial disclosure by public officials to limitations on lobbyists and civil penalties on non-governmental employees. Appellees view it broadly and suggest the amendment embraces only "ethics in government", one subject. Neither offers us any precise historical data as to why this limiting phraseology was selected when it was adopted by the Legislature and submitted to the people for their approval in 1972.[2]
In the absence of guidance from the framers of the phrase, it becomes our responsibility to select one or the other interpretation not only looking back on its development as best we can and with a view to its applicability in this case, but as well with a concern for future cases where the right of initiative may be exercised. More for this last reason than for the others, I deem it appropriate to express my understanding of the term "one subject" in this provision of the Constitution.
When Article XI of the 1968 Constitution was adopted, Section 1 authorized legislative-sponsored changes to a "section", to one or more "articles", or to "the whole" of the Constitution; Section 2 authorized "revision of [the] constitution" or "any part" in ten years and each twentieth year thereafter; and Section 4 authorized a "revision of the entire constitution" by constitutional convention upon petition of the people. Section 3 at that time authorized "amendments *823 to any section" of the Constitution by initiative. Following this Court's decision in Adams v. Gunter, 238 So.2d 824 (Fla. 1970), which distinguished an amendment from a revision, Section 3 was amended to authorize the revision or amendment "of any portion or portions" of the Constitution, provided that the revision or amendment was limited to "one subject".
As I construe the 1972 change in light of what was present in the Constitution before, what was retained in other sections, and Adams, it seems to me obvious that the 1972 change was designed to enlarge the right to amend the Constitution by initiative petition. The choice of the word "portion", however, could not have been intended to be so sweeping as to authorize an initiative revision of the "whole" or the "entire" Constitution, considering that the people had given the Legislature and had themselves retained that broader power in Sections 1 and 4. It follows, I believe, that the power of initiative was consciously extended to multi-section and multi-article revisions short of a complete reworking of the entire document.
From this I conclude that the "one subject" limitation was selected to place a functional, as opposed to locational, restraint on the range of authorized amendments. We are not advised what functional limitation might have been intended, but surely in light of 1968 concerns over populist overhauls by non-deliberative petitions[3] we can deduce an intention to restrain initiative in a manner comparable to restraints on the Legislature. The same term, of course, appears in Article III, Section 6, which states that laws developed in the Legislature "shall embrace but one subject."[4] It makes a great deal of sense to me to view the same phraseology in the Constitution, operating in both cases as a functional limitation on our written laws (one statutory, the other organic), as having the same meaning. At least no justification for a differentiation is here made to appear.
If it is reasonable to conclude that the limitation in Section 3 of Article XI parallels that in Section 6 of Article III, then this case becomes easier to resolve. There is gloss aplenty on the "one subject" limitation for legislation,[5] and we know that widely divergent rights and requirements can be included without challenge in statutes covering a single subject area.[6] On this basis I have no trouble upholding the amendment's concern with "ethics in government" as a single subject suitable for initiative.
Perhaps, as Justice Roberts infers, the Constitution will be subject to potentially devastating effects from multiple initiative petitions having subjects framed as broadly as the mind can devise. There remains to protect against that, of course, the very formidable procedural requirements for sustaining an initiative drive. But beyond even that, the simple fact is that in 1972 the people of Florida made it clear that they no longer wanted their initiative rights confined in the 1968 straight jacket (the "any *824 section" limitation), and the wisdom of their decision is simply irrelevant to our task.
ADKINS and SUNDBERG, JJ., concur.
ROBERTS, Justice (dissenting).
I respectfully dissent for the reasons stated in Adams v. Gunter, 238 So.2d 824 (Fla. 1970), which enjoined off the ballot a proposed constitutional amendment by petition to provide for a unicameral legislature; nor do I think the rationale of that decision was materially changed by the 1972 amendment to Section 3, Article XI, Florida Constitution. The Gunter opinion was authored by the former distinguished Justice E. Harris Drew and concurred in by the late Justice Campbell Thornal and also the current Justice James C. Adkins and Justice Roberts. If this is to be a stare decisis Court, I cannot find any logical reason to recede from that opinion so soon after it was adopted. The rapid abandonment of former precedents of the Court not only confuses the law but has the ultimate effect that the case law of Florida is like a railroad ticket, "Good for one trip only and subject to change at any moment." I do not for one moment question the sincerity of the Governor in sponsoring the so-called Sunshine Amendment nor the nobleness of his purpose. Like "motherhood," every right thinking person favors honesty in government but, is the popular name of a popular subject sufficient reason for the Court to blind itself to the clear mandate of the Constitution of 1968 so recently adopted? I think not. There is little doubt that it was the clear intent of the authors of the initiative provision and its amendment that it be more restrictive and more difficult to amend the Constitution by the initiative method rather than Legislative Resolution or a Constitutional Convention in order to prevent the disturbance of other sections of the charter by taking a popular subject as a vehicle and do damage to other sections in the fine print. It should be more difficult by the initiative. Where an amendment is by Legislative Resolution or Resolution of a Constitutional Convention, there are always public hearings, committee studies, and public debate in developing the format of the proposal, whereas, under the initiative section involved here, it only takes one person, not even required to be a resident of the State, nor learned in the law, to pencil an amendment, giving it a popular name, get the signatures, and place it on the ballot without any such committee action, study or debate. The late and revered Justice Terrell once said, "It is hard to amend the Constitution and it ought to be hard."
Significantly, the Constitution of the United States in 200 years has been amended only 26 times, whereas, the Constitution of Florida, carefully prepared following a two-year study and which became effective as recent as 1969, has already been amended 14 times with nine proposed amendments on the ballot in November, 1976. If all of these should be adopted, the recent 1968 Constitution of Florida would have been amended 23 times in seven years in contrast to the Constitution of the United States being amended only 26 times in 200 years. We can well take judicial notice that there is already on the statute books of this State, a law recently enacted by the Legislature, after committee study, public hearings, and floor debate, which is as protective of the people as the proposed amendment. We also take judicial notice that there will be another constitutional revision in less than two years and if further restriction is needed beyond that presently provided by the Legislature, it can be done at that time.
I close this dissent with a pronouncement by the late Justice Campbell Thornal in Adams v. Gunter, supra, in which he said:
"It would be easy to do as appellee urges us to do by transferring to the electorate the burden of making our decisions on an idealistic pronouncement `to let the people decide.' This, however, is not, in my view, the fulfilment of our judicial responsibility. It is often much more difficult for us as judges to make a stand and `do the people's will' when the responsibility is clearly ours under the law. It is the sort of responsibility which frequently we would as soon not have but *825 which, nevertheless, we must assume as judicial officers."
NOTES
[1] Art. V, § 3(b)(1), Fla. Const.
[2] See Adams v. Gunter, 238 So.2d 824 (Fla. 1970); Goldner v. Adams, 167 So.2d 575 (Fla. 1964); Rivera-Cruz v. Gray, 104 So.2d 501 (Fla. 1958); Pope v. Gray, 104 So.2d 841 (Fla. 1958); Gray v. Golden, 89 So.2d 785 (Fla. 1956); City of Coral Gables v. Gray, 154 Fla. 881, 19 So.2d 318 (1944); Collier v. Gray, 116 Fla. 845, 157 So. 40 (1934); Gray v. Moss, 115 Fla. 701, 156 So. 262 (1934); Gray v. Winthrop, 115 Fla. 721, 156 So. 270 (1934); Gray v. Childs, 115 Fla. 816, 156 So. 274 (1934); and, Crawford v. Gilchrist, 64 Fla. 41, 59 So. 963 (1912).
[3] See Adams v. Gunter; Rivera-Cruz v. Gray; City of Coral Gables v. Gray; Gray v. Childs; Crawford v. Gilchrist; supra note 2.
[4] Gray v. Childs, 115 Fla. 816, 156 So. 274 (1934).
[1] Art. XI, § 3, Fla. Const.
[2] In fairness to counsel it should be said that the time available to develop arguments and resource material germane to this case was extremely limited. The suit was brought in late September and all parties knew that it would be necessary to resolve this controversy before approval, preparation and distribution of ballots for the November general election. As a consequence neither counsel nor the Court have had an opportunity to develop the case as thoroughly as they might choose.
[3] See Justice Roberts' dissenting opinion in this case.
[4] Appellant notes that this provision also allows legislation to embrace matters "properly" connected with the one subject, but that Article XI, Section 3 also allows initiative amendments to embrace only matters "directly" connected with the one subject. This distinction is not critical here, however, since the debate between the parties involves the number of "subjects" in the proposal before us and not its peripheral "matters".
[5] See, among others, Bd. of Pub. Inst. of Broward Cty. v. Doran, 224 So.2d 693 (Fla. 1969); State ex rel. Landis v. Thompson, 120 Fla. 860, 163 So. 270 (1935); Fine v. Moran, 74 Fla. 417, 77 So. 533 (1917); Ex Parte Knight, 52 Fla. 144, 41 So. 786 (1906). Where provisions in the present constitution closely follow those in predecessor constitutions it is proper to refer to decisions interpreting the earlier documents. In re Advisory Opinion to the Governor, 112 So.2d 843 (Fla. 1959).
[6] Note, for example, the range of filings, penalties, rights limitations and forfeitures encompassed in the corporations law (Chapter 75-250, Laws of Florida) and the probate law (Chapter 75-220, Laws of Florida) recently adopted by the Legislature.