363 So.2d 337 (1978)
FLORIDIANS AGAINST CASINO TAKEOVER, etc., et al., Appellants-Petitioners,
v.
LET'S HELP FLORIDA, etc., et al., Appellees-Respondents.
Nos. 54571, 54535.
Supreme Court of Florida.
October 19, 1978.
Rehearing Denied November 9, 1978.
*338 Richard H.M. Swann of Hall & Swann, Coral Gables, for appellants-petitioners.
Tobias Simon and Theodore L. Tripp, Jr. of the Law Offices of Tobias Simon, Miami, for appellees-respondents.
Maurice Rosen, North Miami Beach, for The Tenants Ass'n of Florida, Inc., amicus curiae.
PER CURIAM.
Floridians Against Casino Takeover have appealed the judgment of the circuit court which held Proposition 9, popularly known as the Casino Gambling Amendment, to "embrace but one subject and matter directly connected therewith," in accordance with Article XI, Section 3 of the Florida Constitution. Because the trial court construed this constitutional provision, we have jurisdiction under Article V, Section 3(b)(1), Florida Constitution. We affirm the trial court.
The appellants, a group of state residents, property owners, and taxpayers, brought suit to enjoin the gathering and the certification of constitutional amendment initiative petition signatures, on the ground that the amendment sought to be proposed is violative of the single-subject requirement of Article XI, Section 3, of the Florida Constitution, which provides: "The power to propose the revision or amendment of any portion or portions of this constitution by initiative is reserved to the people, provided that, any such revision or amendment shall embrace but one subject and matter directly connected therewith."
The wording of the proposed amendment, which was set out in full on the petition forms, is as follows:
Art. X, § 15, Fla. Const. is created to read:
Casino Gambling: The operation of state regulated privately owned gambling casinos is hereby authorized only within the following limited area:
That area of Dade and Broward Counties, Florida, bounded on the East by the Atlantic Ocean; on the West by the centerline of State Road A1A as designated on March 1, 1978 to the centerline of 5th Street (U.S. # 41) and also bounded on the West by the centerline of Collins Avenue from its intersection with 5th Street Southerly to Biscayne Street and the Southerly prolongation of the centerline of Collins Avenue to an intersection with the centerline of Government Cut; bounded on the South by the centerline of Government Cut; and bounded on the North by the North line of Lot 1, Block 14, Beverly Beach, according to the Plat thereof recorded in Plat Book 22, Page 13, Broward County Records.
Taxes upon the operation of gambling casinos shall be collected by the State and appropriated to the several counties, school districts and municipalities for the support and maintenance of the free public schools and local law enforcement.
The trial court held that the proposed amendment contains only one subject and does not violate Article XI, Section 3, and dismissed the complaint with prejudice. The appellants would have us reverse the *339 trial court and enforce our judgment by asserting jurisdiction over the Secretary of State by appropriate process and remove the proposed amendment from the ballot of the upcoming general election.
The appellants present two arguments in support of their contention that the proposed amendment is invalid under Article XI, Section 3. The first is that the inclusion of several matters in one proposed amendment constitutes "logrolling," the evil the single-subject requirement is designed to prevent. The trial court correctly stated that in the face of such a challenge a court's duty is to uphold the proposal unless it can be shown to be "clearly and conclusively defective." Weber v. Smathers, 338 So.2d 819 (Fla. 1976); Goldner v. Adams, 167 So.2d 575 (Fla. 1964).
This Court has recognized previously that the evil sought to be avoided by requirements such as the one we deal with here is "logrolling." In Adams v. Gunter, 238 So.2d 824 (Fla. 1970), the opinion of this Court quoted extensively from McFadden v. Jordan, 32 Cal.2d 214, 196 P.2d 787, 796-797 (1948), which dealt with an initiative amendment to the constitution of California. The concern over "logrolling" is expressed there:
The proposal is offered as a single amendment but it obviously is multifarious. It does not give the people an opportunity to express the approval or disapproval severally as to each major change suggested; rather does it, apparently, have the purpose of aggregating for the measure the favorable votes from electors of many suasions who, wanting strongly enough any one or more propositions offered, might grasp at that which they want, tacitly accepting the remainder. Minorities favoring each proposition severally might, thus aggregated, adopt all.
By way of analogy, Section 1 of Article XVII, Constitution of 1885, prior to amendment in 1948, required that legislatively-proposed amendments "shall be so submitted as to enable the electors to vote on each amendment separately." This requirement was interpreted in City of Coral Gables v. Gray, 154 Fla. 881, 19 So.2d 318 (1944). The issue there was whether a proposed amendment contained more than one "amendment" under this provision. Because the amendment at issue would have worked numerous and diverse changes in the powers, duties, and characters of a number of the constitutional officers of two counties, the Court invalidated it. The Court discussed the rule being applied. If a proposed amendment has but one main purpose and all else included is incidental and reasonably necessary to effectuate the main object and purpose contemplated, it is not susceptible to the charge that it contains more than one amendment.
[T]he fact that an amendment may be capable of separation into two or more propositions concerning the value of which diversity of opinion might arise is not alone sufficient to condemn the proposed amendment; provided the propositions submitted may be logically viewed as having a natural relation and connection as component parts or aspects of a single dominant plan or scheme. Unity of object and plan is the universal test, and it is to be looked for in the ultimate end sought, not in the details or steps leading to the end.
19 So.2d at 320.
Article XI, Section 3, of the Florida Constitution of 1968, originally provided that the people had the power to propose by initiative, amendment of any "section" of the Constitution. In Adams v. Gunter, supra, the Court was faced with an initiative proposal calling for a unicameral legislature. The Court distinguished the concepts of "amendment" and "revision":
It is clear ... that the power reserved to the people to amend any section of the Constitution, includes only the power to amend any section in such a manner that such amendment if approved would be complete within itself, relate to one subject and not substantially affect any other section or article of the Constitution or require further amendments to *340 the Constitution to accomplish its purpose.
238 So.2d at 831.
The Court sustained the Secretary of State's refusal to place the proposal on the ballot.
In response to this decision, the people adopted a legislatively-proposed amendment to Article XI, Section 3, to provide for revision or amendment of "any portion or portions" of the Constitution by initiative, upon the condition that the proposal embrace a single subject and matter directly connected therewith. H.J.R. No. 2835, p. 1665, Laws of Florida (1972).
Article XI, Section 3, as thus amended was before the Court in Weber v. Smathers, supra. At issue was the validity of the Sunshine Amendment, which was proposed by initiative, under the single subject requirement.
In this first decision to deal with the initiative process subsequent to the 1972 amendment several principles evolved which, to our mind, settled the standard of review by the judiciary when confronted by an assault upon a particular initiative proposal. First, "the 1972 change was designed to enlarge the right to amend the Constitution by initiative petition."[1] Second, the burden upon the opponent is to establish that the initiative proposal "is clearly and conclusively defective."[2] Third, "the `one subject' limitation was selected to place a functional, as opposed to locational, restraint on the range of authorized amendments."[3] Last, in applying the foregoing principles to the amendment there under consideration, which arguably embraced at least five "subjects" ranging from financial disclosure by public officials to limitations on lobbyists and civil penalities on nongovernmental employees, the philosophy emerged that the one subject limitation should be viewed broadly rather than narrowly. The narrow view would have compelled a finding that at least five "subjects" were embraced within the proposal. The broad view accepted, in fact, by the Court led to upholding the proposal as a single subject  "ethics in government." This pragmatic and common sense judicial philosophy applied to the proposal here under consideration leads inexorably to the conclusion that it, too, possesses the requisite functional unity to pass muster under Article XI, Section 3, Florida Constitution.
The present proposal (1) authorizes state regulated, privately operated casino gambling in a specific geographical area and (2) directs the anticipated tax revenues from that source to education and local law enforcement. The amendment in Weber encompassed several classes of people, several types of disclosures, and several kinds of penalties. There were at least eight categories of individuals affected by the amendment including elected constitutional officers, candidates, state-wide elected officers, public employees, legislators and former legislators, former state-wide elected officers and all other persons and entities who might induce a breach of the public trust. The amendment also referred to two types of financial disclosures: (1) full disclosure for all constitutional officers and candidates and (2) disclosure of campaign finances by all public officers and candidates. Moreover, it authorized two distinct penalties  pension forfeiture and civil damages. Just as the Court in Weber concluded that financial disclosure and loss of pension are elements within the ambit of a single subject  ethics in government  so is the generation and collection of taxes, and the distribution thereof, part and parcel of the single subject of legalized casino gambling. In both instances the various elements serve to flesh out and implement the initiative proposal, thereby forging an integrated and unified whole.
Furthermore, as perceived by Justice England in Weber, it seems appropriate to draw a parallel between Article XI, Section 3, and Article III, Section 6, Florida Constitution, *341 because each utilizes the restraining phrase "shall embrace but one subject." The former applies to the constitutional initiative process while the latter deals with enactment of laws by the legislature. However, the need for germanity is common to both. Noting that there "is gloss aplenty on the `one subject' limitation for legislation" he concluded "that widely divergent rights and requirements can be included without challenge in statutes covering a single subject area."[4] (Emphasis supplied.) His observation is correct. See the authorities cited by Justice England in Weber.
The second ground espoused by appellants for invalidation of the initiative proposal is that it will create inconsistencies and confusion in the Constitution. Appellants argue that the proposed amendment conflicts with Article VII, Section 8, Florida Constitution, which reads as follows:
Aid to local governments.  State funds may be appropriated to the several counties, school districts, municipalities or special districts upon such conditions as may be provided by general law.

(Emphasis supplied.)
This is so, they assert, because the proposal limits the objects of and purposes for appropriation of "taxes upon the operation of gambling casinos ... to the several counties, school districts and municipalities for the support and maintenance of the free public schools and local law enforcement." This argument draws support from language in Adams v. Gunter, supra, where it was stated:
It is clear ... that the power reserved to the people [is] to amend any section ... in such a manner that such amendment if approved would be complete within itself, relate to one subject and not substantially affect any other section or article of the Constitution or require further amendments to the Constitution to accomplish its purpose.
238 So.2d at 831 (emphasis supplied).
It appears that the majority in Weber applied the considerations articulated in Adams in evaluating the validity of a post-1972 initiative proposal. This conclusion emanates from the following expressions in Weber:
It is contended by the appellant that Adams v. Gunter, 238 So.2d 824 (Fla. 1970), which expressly required the amendment of thirty-three other constitutional sections, ... [applies] and [is] controlling in the instant case. We disagree. The proposed amendment is sufficiently complete within itself, requiring no other amendment to effect its purpose.
... Further, the proposed amendment, if adopted, will not conflict with other articles and sections of the Constitution... .
338 So.2d at 822.
Notwithstanding the inadvertent use of that language such an analysis has no place in assessing the legitimacy of an initiative proposal subsequent to the 1972 revision of Article XI, Section 3. Once the constitutional restraint is perceived to be functional as opposed to locational,[5] substantial effect by the initiative proposal upon any other section or article of the Constitution becomes irrelevant. And, of course, "conflict" with existing articles or sections of the Constitution can afford no logical basis for invalidating an initiative proposal. Such an assertion ignores established patterns of constitutional construction. When a newly adopted amendment does conflict with preexisting constitutional provisions, the new amendment necessarily supersedes the previous provisions. Otherwise, an amendment could no longer alter existing constitutional provisions and the amendment process might, in every case, be frustrated *342 by the judicial determination that a given proposal conflicts with other provisions. To the extent that the above-quoted language from Weber is to the contrary with respect to the test by which post-1972 initiative proposals are to be measured, that language is disapproved. Consequently, the argument of appellants on that ground is rejected.
While we do not pass judgment upon the wisdom or merit of the proposed initiative amendment, we hold that it is not "clearly and conclusively defective" within the purview of Article XI, Section 3, Florida Constitution, for the purpose of remaining on the ballot so that the voters of this State may exercise their judgment as to its merit. Accordingly, the final order of the trial court is affirmed.
It is so ordered.
ENGLAND, C.J., and ADKINS, OVERTON, SUNDBERG and HATCHETT, JJ., concur.
BOYD, J., concurs specially with an opinion.
ALDERMAN, J., dissents with an opinion.
BOYD, Justice, concurring specially.
There is no judicial function more serious and important than that which relates to removal of proposed constitutional amendments from the ballot. Since all power of government flows from the people, courts should exercise extreme restraint in denying electors the right to vote on proposed changes in the government.
Recognizing the detriment flowing from combining more than one subject under a single proposed amendment  a tactic known as "logrolling"  the people themselves adopted by popular vote Article XI, Section 3 of the Florida Constitution, which prohibits amendments proposed by initiative having more than one subject. This was a form of self-restraint which the people imposed upon themselves.
All proposed constitutional amendments arising through initiative should come to this Court with a presumption of validity. It is only in those instances in which the proposed amendment clearly fails to meet constitutional standards that this Court should require removal of the questions from the ballot.
In the case of Weber v. Smathers, 338 So.2d 819 (Fla. 1976), this Court considered and resolved the same question that is before the Court in this case. In that proceeding attacks were being made upon the "Sunshine" amendment  now Article II, Section 8  relating to ethics in government, on the alleged basis that the amendment incorporated several topics under one question. This Court was faced with the problem of either giving a broad interpretation which would leave the matter on the ballot or a narrow interpretation which would remove same from the ballot. Our decision was to leave the questions to be decided by popular vote. It seems to me that the alleged deficiency in this proposed amendment relating to casino gambling is less offensive to the single subject requirement than were the provisions of the Sunshine amendment which was more extensive and verbose.
Under the doctrine of stare decisis, and in order to permit the public to know what standards are acceptable to this Court, we should adhere in this case to the philosophy expressed in the opinion of Weber v. Smathers, above, and to the dissenting views which Justice Ervin and I expressed in Gunter v. Adams, 238 So.2d 824 (Fla. 1970).
For the above reasons, I respectfully concur specially with the majority opinion.
ALDERMAN, Justice, dissenting.
I believe that the proposed amendment is "clearly and conclusively defective" because it embraces more than one subject in violation of Article XI, Section 3, Florida Constitution. The combination of two subjects in the proposed amendment is a classic example of the very evil which the one subject limitation is designed to prevent. This is so because the interest of those citizens who favor casino gambling is not necessarily the *343 same as the interest of those citizens who seek additional tax revenues for the support and maintenance of free public schools and local law enforcement. In fact, the interest of these groups in some instances may be in conflict.
The strategy of aggregating dissimilar provisions in one proposal to attract support from diverse groups, commonly known as "logrolling," did not originate with the proponents of casino gambling. Its roots are found deep in the history of American politics. Such practice would not be unlawful in the present case if it were not for the constitutional prohibition imposed by Article XI, Section 3. By that provision, the people of Florida have in effect said that they will not allow "logrolling" by those who attempt to amend their constitution by the initiative process.
Certainly the people have the right to adopt a constitutional amendment that would legalize casino gambling in Florida, but they also have the right to expect that any proposed amendment will be submitted to them in the manner prescribed by the present constitution. An initiative amendment limited to casino gambling and matters directly connected therewith would be lawful. The amendment presently under consideration, in my opinion, is not lawful because the allocation of tax revenue is separate from and not directly connected to the subject of casino gambling. The proposed amendment in its present form is a blatant attempt at "logrolling," or as appellants say in their brief, it is "a sugar coated pill to attempt to persuade those Floridians not living in Dade and South Broward Counties to vote for casino gambling on the theory that they may receive some benefit therefrom but none of the detriments brought about by casino gambling."
The majority views the one subject limitation broadly and says that they have applied a "pragmatic and common sense philosophy" in concluding that the proposed amendment possesses the requisite functional unity to pass muster. This view, in my opinion, so dilutes the one subject limitation of Article XI, Section 3, that there is practically no limitation on the scope of an amendment proposed by the initiative process. I fear that what they have done is to "pragmatize" and "common sense" the one subject limitation right out of the constitution. I do not think this is what was intended by the people when they placed this limitation in the constitution.
A different situation was presented in Weber, where this Court found that the "Sunshine" amendment did not violate the one subject limitation. The "Sunshine" amendment had several sections, but they were all directly connected with the general subject of "ethics in government." Not so in the present case where two separate and distinct subjects, casino gambling and the allocation of tax revenue, are joined together.
I recognize that it would be a very serious thing to remove the proposed amendment from the ballot, but I perceive that to be the Court's duty when, as in this case, the proposed amendment does not comply with the dictates of our present constitution. Having concluded that the proposed amendment is "clearly and conclusively defective," and therefore unlawful, I respectfully dissent.
NOTES
[1] Weber v. Smathers, 338 So.2d at 823 (England, J., concurring).
[2] Id. at 822.
[3] Id. at 823 (England, J., concurring).
[4] Id. at 823 (England, J., concurring).
[5] See Smathers v. Smith, 338 So.2d 825, 828 (Fla. 1976), n. 8:

"A locational limit had been placed on the right of initiative in 1968, limiting amendments to `any section.' Following our decision in Adams v. Gunter, 238 So.2d 824 (Fla. 1970), that restriction was removed altogether. See Weber v. Smathers, 338 So.2d 819 (Fla. 1976)."