497 So.2d 1204 (1986)
John F. CARROLL, et al., Petitioners,
v.
George FIRESTONE, Etc., et al., Respondents.
Thomas C. TODD, et al., Appellants,
v.
George FIRESTONE, Etc., et al., Appellees.
Nos. 69410, 69426.
Supreme Court of Florida.
November 13, 1986.
*1205 Joseph W. Little, in pro. per., Gainesville, and Robert T. Mann, in pro. per., Gainesville, for John F. Carroll, Joseph W. Little, and Robert T. Mann, Taxpayers and Citizens of Florida.
Herbert R. Kraft, Tallahassee, for Thomas C. Todd and People Against Legalized Lotteries, Inc.
Jim Smith, Atty. Gen., Mitchell D. Franks, Chief Trial Counsel, and Eric J. Taylor, Asst. Atty. Gen., Tallahassee, for George Firestone.
W. Dexter Douglass and Michael F. Coppins of Douglass, Cooper & Coppins, Tallahassee, for Excellence Campaign: An Education Lottery, Inc. (E.X.C.E.L.)
Thomas W. Young III, Gen. Counsel, Tallahassee, for the Florida Educ. Association/United AFT, AFL-CIO, amicus curiae.
Thomas W. Brooks of Meyer, Brooks and Cooper, P.A., Tallahassee, for Florida Teaching Profession-National Educ. Ass'n, amicus curiae.
PER CURIAM.
Appellants Todd and People Against Legalized Lotteries, Inc., seek review of a summary judgment that Proposition Five, a proposed initiative amendment to article X of the Florida Constitution, embraces only one subject and matter directly connected therewith and that the ballot summary accompanying the proposed amendment does not contravene section 101.161, Florida Statutes (1985). The First District Court of Appeal certified the judgment as being of great public importance requiring immediate resolution by this Court. We have jurisdiction. Art. V, § 3(b)(5), Fla. Const. Petitioners Carroll, Little and Mann seek a writ of mandamus directing Respondent Firestone, Secretary of the State of Florida, to remove the proposed amendment from the November 1986 ballot. We have jurisdiction. Art. V, § 3(b)(8), Fla. Const.; Fine v. Firestone, 448 So.2d 984 (Fla. 1984).
The proposed amendment was initiated by appellee/respondent Excellence Campaign: An Education Lottery, Inc. (E.X.C.E.L.). There is no question but that the procedural requirements of Florida law were followed and that the requisite number of elector signatures were obtained pursuant to article XI, section 3. Thus, appellee/respondent Firestone is not the real party in interest. The issues raised are of substance for which E.X.C.E.L. is the real party in interest.
Appellants/petitioners urge four grounds in support of their position that the proposed amendment should be removed from the ballot: that it violates the single subject requirement of article XI, section 3; that the ballot summary violates the requirements of section 101.161 and case law; that there was fraud in inducing voters to sign the petition forms; and that the schedule clause of the purposed amendment violates article XI, section 1 of the Florida Constitution. We find no merit in any of these arguments, affirm the judgment below, and deny the petition for writ of mandamus.
The proposed amendment reads as follows:
(a) Lotteries may be operated by the State.
(b) If any subsections of the Amendment of the Florida Constitution are held unconstitutional for containing more than one subject, this Amendment shall be limited to subsection (a) above.
(c) This Amendment shall be implemented as follows:
(1) On the effective date of this Amendment, the lotteries shall be known as the Florida Education Lotteries. Net proceeds derived from the lotteries shall be deposited to a state trust fund, to be designated The State Education Lotteries Trust Fund, to be *1206 appropriated by the Legislature. The schedule may be amended by general law.
In pertinent part, article XI, section 3 reads:
The power to propose the revision or amendment of any portion or portions of this constitution by initiative is reserved to the people, provided that, any such revision or amendment shall embrace but one subject and matter directly connected therewith.
The relationship between the three subsections of the proposed amendment determines whether the amendment contains one subject and matter directly connected therewith. Subsection (b) is directly connected with subsections (a) and (c) in that it states, in effect, if subsection (c) is held to contain a different subject than subsection (a), that (c) will be stricken and (a) will stand alone. Petitioners Carroll, et al., suggest that subsection (b) impinges on this Court's constitutional authority to interpret the Constitution and thus amends article V of the Constitution. We think not. Subsection (b) has no force unless we determine that subsections (a) and (c) contain more than one subject. Moreover, while we are charged with the ultimate responsibility for interpreting the Constitution, the intent of the drafters or adopters of a constitutional provision is a highly relevant factor. We see no constitutional infirmity, but much to commend, in a drafter attempting to make clear the intent of a constitutional provision.
The controlling question then becomes whether subsections (a) and (c) contain only one subject and matter directly connected therewith. Subsection (a) identifies a potential revenue source and subsection (c) prescribes a tentative recipient of the revenue. We see no essential distinction between the amendment here and the one we approved in Floridians Against Casino Takeover v. Let's Help Florida, 363 So.2d 337 (Fla. 1978). We recognize that in Floridians the taxes on casinos, assuming casinos were authorized and taxed, were committed to a specific purpose while here the revenues if any, are only tentatively committed to a specific fund. We do not consider this distinction significant and hold that subsection (c) contains matter directly connected to the authorization for lotteries, subsection (a).
The ballot summary reads as follows:
The Amendment authorizes the state to operate lotteries. It provides a severance clause to retain the above provision should any subsections be held unconstitutional because of more than one subject. The schedule provides, unless changed by law, for the lotteries to be known as the Florida Education Lotteries and for the net proceeds derived to be deposited in a state trust fund, designated State Education Lotteries Trust Fund, for the appropriation by the Legislature.
Appellants/petitioners argue that this summary does not adequately inform the voter of the substance of the amendment as required by section 101.161. We disagree. It is not necessary to explain every ramification of a proposed amendment, only the chief purpose. Miami Dolphins v. Metropolitan Dade County, 394 So.2d 981 (Fla. 1981). The summary makes clear that the amendment authorizes state lotteries and that the revenues from such lotteries, subject to legislative override, will go to the State Education Lotteries Trust Fund. That is the chief purpose of the amendment and is all that the statute requires. It is true, as appellants/petitioners urge, that the legislature may choose not to authorize lotteries, not appropriate the proceeds to educational uses, and even to divert the proceeds to other uses. However, those questions go to the wisdom of adopting the amendment and it is for the proponents and opponents to make the case for adopting or rejecting the amendment in the public forum.
Appellants Todd, et al., also argue that the sponsors of the amendment committed fraud in inducing voters to sign the initiative petition by promising that a lottery could produce over $300 million annually for Florida. We express no opinion on the accuracy of this promise but note that the *1207 petition form signed by the electors is prominently identified as a paid political advertisement. We decline to embroil this Court in the accuracy or inaccuracy of political advertisements clearly identified as such.
Finally, subsection (c) of the proposed amendment provides that the schedule of implementation may be amended by general law. Petitioners Carroll, et al., argue that this permits the legislature to amend a portion of the Constitution by simple majority vote in violation of article XI, section 1. We see no merit in this argument. The clause, if adopted, reflects a decision by the voters to leave the ultimate disposition of the proceeds received from lotteries, if established, to the discretion of the legislature. Such delegations of authority to the legislative, executive, or judicial branches of government is not unusual or constitutionally infirm. Our Constitution consists in large part of a delegation of discretionary authority to the three branches of government and numerous provisions of the Constitution are contingent on general law. See, for example, article I, sections 15(b) and 22; article II, section 8; article III, section 14; article IV, section 4; article V, section 1; article X, section 13; and others too numerous to list.
We affirm the judgment below and deny the petition for writ of mandamus.
No petition for rehearing will be entertained.
It is so ordered.
ADKINS, OVERTON, SHAW and BARKETT, JJ., concur.
BOYD, J., concurs with an opinion.
EHRLICH, J., concurs in result only with an opinion, in which McDONALD, C.J., concurs.
BOYD, Justice, concurring.
I concur in the Court's conclusion that the proposed amendment embraces only one subject and matter directly connected therewith and therefore meets the constitutional standard set forth in article XI, section 3 of the Florida Constitution. We construed the constitutional requirement in Floridians Against Casino Takeover v. Let's Help Florida, 363 So.2d 337 (Fla. 1978), and the proposed amendment here fulfills the requirement as interpreted there.
It is argued here  and the issue is one of much public concern  that many people who are not in favor of the state's operation of a lottery will be persuaded to vote in favor of the amendment by the argument that the revenue is needed and will be expended for education. Both the ballot summary and the initiative petition form are assailed as misleading or at least uninformative of the true effect of the amendment.
The amendment itself makes clear that revenue realized by operation of the lottery will be placed in a state trust fund but that there is no absolute requirement that the funds be spent only on education. Even if it is all used for education this would not necessarily increase the level of state resources devoted to education since the legislature is free to reduce the funding of education from other sources.
The effect of the amendment and the result that will obtain if it is adopted are made known with sufficient clarity by the language of the amendment itself. I agree with the majority that the arguments about the ballot summary and the initiative petition form are not sufficient to raise any constitutional impediment. The fact that people might not inform themselves about what they are voting for or petitioning for is immaterial so long as they have an opportunity to inform themselves. Our constitution contemplates amendment by initiative petition and referendum and if people are so inclined they have a right to participate in these processes while remaining uninformed, just as they may vote on other matters without any requirement that they be well informed.
As I have consistently maintained through many years of challenges to initiative petitions, courts should only strike proposed *1208 amendments from the ballot if they clearly violate the constitution. E.g., Floridians Against Casino Takeover v. Let's Help Florida, 363 So.2d at 342 (Boyd, J., concurring specially); Weber v. Smathers, 338 So.2d 819 (Fla. 1976); Adams v. Gunter, 238 So.2d 824, 835 (Fla. 1970) (Boyd, J., dissenting). The proposed amendment in the present case meets the constitutional standard and should remain on the ballot.
EHRLICH, Justice, concurring in result only.
I concur with the result reached by the majority that the proposed amendment before us passes constitutional muster. I disagree with the majority's reasoning on the crucial issue of whether this proposed amendment contains only one subject and, therefore, write separately.
The majority finds "no essential distinction" between the amendment at issue in Floridians Against Casino Takeover v. Let's Help Florida, 363 So.2d 337 (Fla. 1978), and the proposed amendment now before us. I disagree. In Fine v. Firestone, 448 So.2d 984 (Fla. 1984), I stated:
It would be difficult to imagine a better illustration of logrolling than the initiative proposal approved in Floridians. Tying increased funding of education to the casino gambling proposal was unarguably an attempt to enlist the support of those concerned with the quality of education in Florida for a measure inherently unrelated to education.
Id. at 996 (Ehrlich, J., concurring in result). In my view the infirmity in Floridians was that the revenue generated by casino gambling would be inextricably linked to funding education and law enforcement. This link, as I perceived it, violated the single-subject requirement of article XI, section 3. This is the very reason why I find the proposal before us to contain but a single subject: any revenue generated from a state lottery may be expended by the legislature for any purpose. The fact that the schedule to the proposed amendment, section (c), uses the words Educational Lottery Trust Fund is unarguably an attempt to attract those in favor of increased educational funding to the ranks of those in favor of a state lottery. However, it is constitutionally acceptable because both the amendment and the ballot summary clearly tell the voters that any revenue generated by a state lottery will go into a trust fund and may be appropriated by the legislature; both the amendment and the summary inform the electorate that this provision may be changed by the legislature. In other words, the proposed amendment could have simply authorized a state lottery and been silent on the subject of where any revenues derived therefrom would be expended; admittedly, this would have been less politically advantageous to the proponents of a lottery, but the proposal would still contain only a single subject. This is precisely the effect of the proposal before us. Section (c) does nothing more than suggest to the legislature that any revenue from the lottery will go to the Educational Lottery Trust Fund. Contrary to the majority's reasoning, the distinction between a "locked-in" revenue provision such as was involved in Floridians and the open-ended provision before us here is not only significant, but is dispositive under what I believe to be the correct single-subject analysis.
I lamented in Fine that this Court's semblance of continued adherence to both Floridians and Weber v. Smathers, 338 So.2d 819 (Fla. 1976), sent a "garbled message" to the public concerning the proper method for utilizing the citizens initiative to amend our constitution. 448 So.2d at 996. In my opinion, the majority's misplaced reliance on Floridians only adds to the obfuscation which has characterized this Court's treatment of article XI, section 3's single-subject requirement.
McDONALD, C.J., concurs.