PER CURIAM.
The Attorney General of Florida has requested this Court’s opinion as to the validity of an initiative petition circulated pursuant to article XI, section 3 of the Florida Constitution. We have jurisdiction. See art. IV, § 10, art. V, § 3(b)(10), Fla. Const. For the reasons expressed below, we conclude that the proposed amendment is exempt from the single-subject requirement of article XI, section 3 of the Florida Constitution, but the ballot summary is misleading and does not comply with section 101.161(1), Florida Statutes (2007), and should not be included on the ballot.
I. FACTS
Cut Property Taxes Now, Inc. (CPTN) sponsored an initiative petition to amend the Florida Constitution pursuant to the initiative petition process contained in article XI, section 3 of the Florida Constitution. The initiative petition seeks to amend the Florida Constitution to establish a 1.35% property tax cap, unless a greater percentage is approved by voters. After the petition was filed with the Secretary of State, the Secretary advised the Attorney General that the initiative petition met the registration, submission, and signature criteria set forth in section 15.21, Florida Statutes (2007). In accordance with the provisions of article IV, section 10 of the Florida Constitution, and section 16.061, Florida Statutes (2007), the Attorney General petitioned this Court for a written opinion as to whether the proposed amendment complies with the single-subject requirement of article XI, section 3 of the Florida Constitution and as to whether the ballot title and summary of the proposed constitutional amendment comply with section 101.161(1), Florida Statutes (2007).
The full text of the proposed amendment reads as follows:
Article VII, Section 9 of the State Constitution is amended by adding a new Paragraph (c) to read:
ARTICLE VII FINANCE AND TAXATION
Section 9. Local taxes.—
(c) Notwithstanding any other provision contained in this Constitution, the maximum amount of all ad valorem taxes collected by counties, school districts, municipalities, and special districts on any parcel of real property shall not, when combined, exceed 1.35% of the *971 parcel’s highest taxable value. The term “taxable value” refers to the value of real property to which millage rates are applied. The Legislature shall, by general law, provide for the distribution of tax revenues derived from parcels for which the combined ad valorem tax levies exceed 1.35% of the parcel’s highest taxable value. This subsection does not apply to ad valorem taxes levied for the payment of bonds issued pursuant to Section 12 of this Article or levied for periods not longer than two years when authorized by a vote of the electors.
The ballot title for the proposed amendment is “1.35% property tax cap, unless voter approved.” The ballot summary for the proposed amendment states:
Provides that the property tax on any parcel of real property shall never exceed 1.35% of the highest taxable value of the property. This property tax limit shall apply to all property taxes except property taxes approved by voters. Distribution of revenue from parcels that have reached the 1.35% limit shall be determined by general law. Does not amend Save Our Homes, the Homestead Exemption, or any other exemption.
In accordance with the requirements of section 100.371, Florida Statutes (2007), the Financial Impact Estimating Conference transmitted its financial impact statement (FIS) with respect to the initiative to the Attorney General. The Attorney General also petitioned this Court for an advisory opinion as to whether the FIS complies with the requirements of article XI, section 5, subsection (b) of the Florida Constitution and section 100.371, Florida Statutes (2007).
II. GOVERNING LAW
Article XI, section 3 of the Florida Constitution gives Florida citizens the power to propose a revision or amendment to the constitution through the initiative process. Article IV, section 10 requires the Attorney General to request an opinion of this Court as to the validity of any initiative petition circulated pursuant to article XI, section 3. In turn, article V, section 3, subsection (b)(10) of the Florida Constitution requires this Court to render that advisory opinion. The Court’s inquiry in such cases is limited to two issues: (1) whether the amendment violates the single-subject requirement of article XI, section 3 of the Florida Constitution, and (2) whether the ballot title and summary violate the requirements of section 101.161(1), Florida Statutes (2007). See, e.g., Advisory Op. to Att’y Gen. re Funding of Embryonic Stem Cell Research, 959 So.2d 195, 197 (Fla.2007); Advisory Op. to Att’y Gen. re Referenda Required for Adoption and Amendment of Local Government Comprehensive Land Use Plans, 902 So.2d 763, 765 (Fla.2005).
In addressing these two issues, the Court’s inquiry is governed by several general principles. First, the Court will not address the merits or wisdom of the proposed amendment. Advisory Op. to Att’y Gen. re Treating People Differently Based on Race in Pub. Educ., 778 So.2d 888, 891 (Fla.2000).. Second, “[t]he Court must act with extreme care, caution, and restraint before it removes a constitutional amendment from the vote of the people.” Askew v. Firestone, 421 So.2d 151, 156 (Fla.1982). Specifically, where citizen initiatives are concerned, “[the] Court has no authority to inject itself in the process, unless the laws governing the process have been ‘clearly and conclusively’ violated.” Advisory Op. to Att’y Gen. re Right to Treatment & Rehab. for Non-Violent Drug Offenses, 818 So.2d 491, 498-99 (Fla.2002); see also Treating People Differently Based on Race in Pub. Educ., 778 So.2d *972 at 891 (“In order for the Court to invalidate a proposed amendment, the record must show that the proposal is clearly and conclusively defective.... ”).
A. Single-Subject Rule
Article XI, section 3 of the Florida Constitution provides in relevant part:
The power to propose the revision or amendment of any portion or portions of this constitution by initiative is reserved to the people, provided that, any such revision or amendment, except for those limiting the power of government to raise revenue, shall embrace but one subject and matter directly connected therewith.
Art. XI, § 3, Fla. Const, (emphasis added). The single-subject limitation exists because the citizen initiative process does not afford the same opportunity for public hearing and debate that accompanies the other constitutional proposal and drafting processes. See Advisory Op. to the Att’y Gen. re Fish & Wildlife Conservation Comm’n, 705 So.2d 1351, 1353 (Fla.1998). The single-subject provision “is a rule of restraint designed to insulate Florida’s organic law from precipitous and cataclysmic change.” In re Advisory Op. to Att’y Gen. — Save Our Everglades, 636 So.2d 1336, 1339 (Fla.1994). The single-subject rule prevents an amendment from (1) engaging in “logrolling” or (2) “substantially altering or performing the functions of multiple aspects of government.” Advisory Op. to Att’y Gen. re Fla. Transp. Initiative for Statewide High Speed Monorail, 769 So.2d 367, 369 (Fla.2000).

Exemption

The Florida Constitution exempts from the single-subject requirement a citizen’s initiative that limits the power of government to raise revenue. See Art. XI, § 3 Fla. Const.[1] The proponent asserts that the proposed initiative is exempt from the single-subject requirement because it directly limits the power of government to raise revenue. In response, the opponent argues that the proposed initiative is not exempt because it substantially affects multiple branches of government and multiple functions performed by different levels of government. In Advisory Op. to the Att’y Gen. re People’s Property Rights Amendments, 699 So.2d 1304 (Fla.1997) {People’s Property Rights Amendments), this Court addressed an initiative petition to amend the Florida Constitution to require voter approval of all new state, local or other taxes. The proponent contended that this initiative came within the exception to the single-subject requirement because it was a proposal to limit the government’s ability to raise revenue. This Court noted that in order to meet this exception an initiative’s focus must involve only methods of revenue raising. See id. at 1310. Therefore, the Court reasoned the exception would not apply to a revenue-limitation initiative if that initiative also substantially changed the powers or *973 functions of more than a single level or branch of government. See id. This Court found that the initiative in People’s Property Rights Amendments affected subjects other than methods of revenue raising. This Court also found that the initiative would have a significant impact on the home-rule powers granted to local government in our constitution. See id. (citing Advisory Op. to Att’y Gen. re Tax Limitation, 644 So.2d 486, 492-93 (Fla.1994) (Tax Limitation I); Harris v. City of Sarasota, 132 Fla. 568, 181 So. 366, 369 (1938)). The Court reasoned that because the initiative impacted several branches of government and several levels of government, the initiative did not fall within the exemption to the single-subject rule and that it violated the single-subject rule. See id.
We conclude that the basic premise articulated in the People’s Property Rights Amendments case is faulty, and we, therefore, recede from that decision to the extent that it conflicts with our decision here. The very purpose of the exemption to the single-subject requirement is to allow a citizen’s initiative limiting the power of government to raise revenue to embrace more than one subject. The exemption is an implicit recognition of the fact that an amendment limiting the raising of revenue by any one or more entities will of necessity affect other revenue-raising entities. Such initiatives will also of necessity impact the prior statutes, rules, or other authority from which the revenue-raising entity previously derived its taxing authority, i.e., home-rule charters. Thus, article XI, section 3 provides that an initiative that limits the power of government to raise revenue may embrace more than one subject. In People’s Property Rights Amendments, we required these type of initiatives to have what article XI, section 3 does not require—a single subject, and we erroneously applied the single-subject provisions to an initiative limiting the government’s revenue-raising power. The caselaw used simply was not applicable because the single-subject analysis was not applicable.
We, therefore, hold that the initiative now before us is exempt from the single-subject requirement because it directly limits the power of government to raise revenue. If we were to conclude otherwise, the exemption would be a nullity because these initiatives placing limitations on the raising of revenue will have an impact on other branches of government.
We recognize that the doctrine of stare decisis “counsels us to follow our precedents unless there has been ‘a significant change in circumstances after the adoption of the legal rule, or ... an error in legal analysis.’ ” Rotemi Realty, Inc. v. Act Realty Co., Inc., 911 So.2d 1181, 1188 (Fla.2005) (quoting Dorsey v. State, 868 So.2d 1192, 1199 (Fla.2003)). In Strand v. Escambia County, 992 So.2d 150 (Fla.2008), we declined to recede from precedent because we concluded that the presumption in favor of stare decisis was strong. See id. at 159-60. In declining to recede from precedent, we outlined the factors that must be considered and the questions that must be asked:
(1) Has the prior decision proved unworkable due to reliance on an impractical legal “fiction”? (2) Can the rule of law announced in the decision be reversed without serious injustice to those who have relied on it and without serious disruption in the stability of the law? And (3) have the factual premises underlying the decision changed so drastically as to leave the decision’s central holding without legal justification?
992 So.2d at 159 (quoting North Fla. Women’s Health & Counseling Services, *974 Inc. v. State, 866 So.2d 612, 637 (Fla.2003)).
This case is distinguished from Strand because the factors that favor adherence to precedent are not present here. There is no long-standing reliance on the property rights decision. The opinion was issued in 1997, some eleven years ago, and has not been relied on for the proposition that a revenue-limiting initiative must still comply with the single-subject requirements. Thus, there will be no serious injustice based on reliance on the prior decision, and there will not be a serious disruption in the stability of the law. In addition we have been presented with evidence that the People’s Property Rights Amendments decision is impractical and unworkable because the exception to the exemption as articulated in that decision would leave no room for operation of the exemption.
Therefore, we recede from that portion of the People’s Property Rights Amendments decision holding that initiatives limiting the government’s right to raise revenue must comply with the single-subject requirement of article XI, section 3 of the Florida Constitution. We also hold that the initiative before us is exempt from the single-subject requirement pursuant to article XI, section 3 because it is an initiative that limits the power of government to raise revenue.
B. Ballot Title and Summary
When a constitutional amendment is submitted for vote by the electorate, a title and summary of the amendment must appear on the ballot. Section 101.161(1), Florida Statutes, which sets forth the statutory requirements for the title and summary, is a codification of the accuracy requirement implicit in article XI, section 5 of the Florida Constitution. See Advisory Op. to Att’y Gen. re Referenda Required for Adoption & Amendment of Local Gov’t Comprehensive Land Use Plans, 902 So.2d 763, 770 (Fla.2005). This accuracy requirement in article XI, section 5 functions as a kind of “truth in packaging” law for the ballot. See Armstrong v. Harris, 773 So.2d 7, 13 (Fla.2000).
Section 101.161(1), Florida Statutes (2007), provides in relevant part:
Whenever a constitutional amendment ... is submitted to the vote of the people, the substance of such amendment ... shall be printed in clear and unambiguous language on the ballot.... The wording of the substance of the amendment ... shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure. ... The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.
(Emphasis added.) This Court has explained that the basic purpose of this provision is “to provide fair notice of the content of the proposed amendment so that the voter will not be misled as to its purpose, and can cast an intelligent and informed ballot.” Advisory Op. to Att’y Gen. re Fee on Everglades Sugar Prod., 681 So.2d 1124, 1127 (Fla.1996). While the ballot title and summary must state in clear and unambiguous language the chief purpose of the measure, they need not explain every detail or ramification of the proposed amendment. See Carroll v. Firestone, 497 So.2d 1204, 1206 (Fla.1986). However, the ballot must give the voter fair notice of the decision he must make. See Askew v. Firestone, 421 So.2d 151, 155 (Fla.1982). We have said that the purpose of section 101.161 is to ensure that voters are advised of the amendment’s true meaning. In assessing the ballot title and summary, this Court should ask two questions, “[f]irst ... whether the ‘ballot title and summary ... fairly inform the voter of the chief purpose of the amendment!,]’ *975 [and] [sjecond ... ‘whether the language of the title and summary, as written, misleads the public.’ ” Advisory Op. to Att’y Gen. re Additional Homestead Tax Exemption, 880 So.2d 646, 651-52 (Fla.2004) (quoting Right to Treatment & Rehab., 818 So.2d at 497; Advisory Op. to Att’y Gen. re Right of Citizens to Choose Health Care Providers, 705 So.2d 563, 566 (Fla.1998)).
In this case the ballot title for the proposed amendment is “1.35% property tax cap, unless voter approved.” The ballot title in this case complies with the technical requirements of section 101.161(1). The ballot summary states:
Provides that the property tax on any parcel of real property shall never exceed 1.35% of the highest taxable value of the property. This property tax limit shall apply to all property taxes except property taxes approved by voters. Distribution of revenue from parcels that have reached the 1.35% limit shall be determined by general law. Does not amend Save Our Homes, the Homestead Exemption, or any other exemption.
The opponent asserts that the ballot summary of the proposed amendment is misleading. We agree.
Firstly, the ballot summary provides the following exception to the 1.35% cap on ad valorem taxes: “except property taxes approved by voters.” The amendment, however, provides for two exceptions, (1) ad valorem taxes levied for the payment of bonds issued pursuant to article VII, section 12; and (2) ad valorem taxes levied for periods not longer than two years when authorized by a vote of the electors. The ballot summary is misleading in two respects. It states that the property tax limits do not apply to property taxes approved by voters but fails to point out that any property taxes approved by voters cannot extend for longer than two years. The summary also does not refer at all to article VII, section 12, nor does it tell the voter that voter approval is not required for all taxes levied for the payment of bonds under article VII, section 12(b).[2]
Secondly, the ballot summary is misleading because it provides for legislative distribution of taxes when the revenue from parcels have reached the 1.35% cap; however, the amendment provides for legislative distribution when the revenue from parcels exceed the 1.35% cap. Having reached 1.35% is synonymous with being at the point of that percentage, whereas, exceeds means is more than the percentage. Thus, that portion of the summary that implies that the Legislature is being authorized to distribute tax revenues above 1.35% is inconsistent with the language of the amendment. We have said that “[a] ballot summary may be defective if it omits material facts necessary to make the summary not misleading.” Advisory Op. to Atty. Gen. re Ltd. Political Terms in Certain Elective Offices, 592 So.2d 225, 228 (Fla.1991) (citing Askew, 421 So.2d at 158 (Ehrlich, J., concurring)). This summary not only omits material facts, it is also misleading because it differs in mate *976 rial ways from the provisions of the amendment itself.
Lastly, we find the ballot summary misleading because it does not inform the voter of the repeal of an existing Florida constitutional provision, specifically article VII, section 9(b).[3] Article VII, section 9(b) provides for the millages that can be assessed by the various local government units, school districts, water management districts, and other special districts. There is nothing in the summary, or indeed the amendment itself, which would put a voter on notice that this constitutional provision is being repealed. It is of particular significance that the terms “mill” and “millage” that are used in article VII, section 9 do not appear in the ballot summary. In Fine v. Firestone, 448 So.2d 984, 989 (Fla.1984), we noted that “an initiative proposal should identify the articles or sections of the constitution substantially affected. This is necessary for the public to be able to comprehend the contemplated changes in the constitution.” Id. at 989. We further noted that it is important so that the initiative’s effect on other unnamed provisions is not left unresolved and open to various interpretations. See id.; see also Tax Limitation I, 644 So.2d at 490 n. 1 (“Identifying an existing section of the constitution that is affected is also important with regard to the clarity requirement of section 101.161.”). The ballot summary in this case does not fairly inform the voters of the substance and effect of this amendment. See Askew v. Firestone, 421 So.2d 151, 156 (Fla.1982) (“The problem, therefore, lies not with what the summary says, but rather with what it does not say.”).
C. Financial Impact Statement
The financial impact statement (FIS) prepared by the Financial Impact Estimating Conference reads as follows;
The amendment will reduce annual total school, county, municipal and special district property tax revenues by at least $6 billion, or 17%, based on 2007 (non-school) and 2008 (school) tax rates. Legislative implementation will likely produce greater reductions and will determine how each type and unit of local government is affected, but these impacts cannot be determined without legislative action. Local government expenditures will be reduced unless replacement revenues are enacted.
This Court’s review of financial impact statements is narrow. We limit our review solely to the issue of whether the statement is clear and unambiguous, consists of no more than seventy-five words, and is limited to addressing the estimated increase or decrease in any revenue or costs to state or local governments. See Advisory Opinion to Attorney Gen. re Funding of Embryonic Stem Cell Research, 959 So.2d 195, 202 (Fla.2007). The FIS in this *977 case is seventy-one words. In addition the FIS is clear and unambiguous because it informs the voter in plain language that the amendment will reduce local government expenditures and annual total school, county, municipal, and special district property tax revenues. The FIS also articulates with precision the estimated cost of the amendment. Specifically, the FIS estimates that the amendment will reduce annual total school, county, municipal, and special district property tax revenues by at least $6 billion or 17% based on 2007 and 2008 tax rates. Therefore, the FIS is in accordance with section 100.371(5).
III. CONCLUSION
For the reasons stated, we conclude that the proposed amendment is exempt from the single-subject requirement of article XI, section 3 of the Florida Constitution because it directly limits the power of government to raise revenue, and that the financial impact statement complies with section 100.371, Florida Statutes (2007). However, we find that the ballot summary is misleading and does not comply with section 101.161(1), Florida Statutes (2007). Accordingly, this proposal should not be included on the ballot.
It is so ordered.
QUINCE, C.J., and WELLS and PARIENTE, JJ., concur.
LEWIS, J., and ANSTEXD, Senior Justice, concur in result only.
CANADY, J., dissents with an opinion, in which POLSTON, J., concurs.

. In Advisory Op. to Att'y Gen. re Tax Limitation, 644 So.2d 486 (Fla.1994) (Tax Limitation I), this Court found the initiative petition that dealt with voter approval of new taxes, with property rights, and with the requirement of a two-thirds vote for new constitutionally imposed state fees or taxes legally deficient because it combined the subjects of taxes and fees. See id. at 491. However, this Court found no violation with an initiative creating an exception to the single-subject requirement for initiatives that deal solely with limiting the power of the government to raise revenue. See id. at 496. This initiative was then placed on the ballot and approved by the voters. Subsequently, this Court found that the initiative petition that it rejected in Tax Limitation I, requiring a two-thirds vote for any constitutionally imposed tax or fee, now fell within this exception. See Advisory Op. to Att’y Gen. re Tax Limitation, 673 So.2d 864, 866 (Fla.1996) (Tax Limitation II).

. Article VII, section 12 provides:
Section 12. Local bonds. — Counties, school districts, municipalities, special districts and local governmental bodies with taxing powers may issue bonds, certificates of indebtedness or any form of tax anticipation certificates, payable from ad valorem taxation and maturing more than twelve months after issuance only:
fa) to finance or refinance capital projects authorized by law and only when approved by vote of the electors who are owners of freeholds therein not wholly exempt from taxation; or

(b) to refund outstanding bonds and interest and redemption premium thereon at a lower net average interest cost rate.

(Emphasis added.)

. Article VII, section 9(b), provides in pertinent part:
(b) Ad valorem taxes, exclusive of taxes levied for the payment of bonds and taxes levied for periods not longer than two years when authorized by vote of the electors who are the owners of freeholds therein not wholly exempt from taxation, shall not be levied in excess of the following millages upon the assessed value of real estate and tangible personal property: for all county purposes, ten mills; for all municipal purposes, ten mills; for all school purposes, ten mills; for water management purposes for the northwest portion of the state lying west of the line between ranges two and three east, 0.05 mill; for water management purposes for the remaining portions of the state, 1.0 mill; and for all other special districts a millage authorized by law approved by vote of the electors who are owners of freeholds therein not wholly exempt from taxation. A county furnishing municipal services may, to the extent authorized by law, levy additional taxes within the limits fixed for municipal purposes.