PER CURIAM.
The Attorney General has requested that this Court review a proposed initiative petition to amend the Florida Constitution. We have jurisdiction. See art. IV, § 10; art. V, § 8(b)(10), Fla. Const. The full text of the proposed amendment provides:
Article X, Section 19 is created to read:
SECTION 19. AUTHORIZATION FOR COUNTY VOTERS TO APPROVE OR DISAPPROVE SLOT MACHINES WITHIN EXISTING PARI-MUTUEL FACILITIES.—
(a) Slot machines are hereby permitted in those counties where the electorate has authorized slot machines pursuant to referendum, and then only within licensed pari-mutuel facilities (ie., thoroughbred horse racing tracks, harness racing tracks, jai-alai frontons, and greyhound dog racing tracks) authorized by law as of the effective date of this section, which facilities have conducted live pari-mutuel wagering events in each of the two immediately preceding twelve month periods.
(b) Within 180 days of the voters’ approval of this amendment, the legislature, by general law, shall implement this section with legislation to license, regulate and tax slot machines. The requirement of a 2/3 majority vote for new state taxes in article XI, section 7 of this constitution shall not apply to any slot machine tax authorized by general law in accordance with the mandate of this amendment to the constitution.
(c) The legislature, by general law, shall appropriate tax revenue derived from slot machines to enhance senior citizen services, classroom construction, education programs, and teachers’ salaries and benefits.
(d) Following the effective date of this amendment and its implementation by the legislature, the governing body of each county in which there is an eligible pari-mutuel facility as defined in subsection (a), may authorize a referendum on whether to approve or disapprove slot machines within its jurisdiction. The electorate of such county, by a majority vote of the voters in such county then voting on this referendum, may authorize slot machines within its jurisdiction.
(e) If the electorate in a particular county votes not to authorize slot machines, that county may conduct subsequent elections for the purposes of considering *100 whether to authorize slot machines pursuant to subsection (a) hereof no earlier than, two years after any vote in which slot machines were not authorized.
(f) If any portion of this section is held invalid for any reason, the remaining portion or portions of this section, to the fullest extent possible, shall be severed from the void portion and be given the fullest possible force and application.
(g) This amendment shall take effect on the date approved by the electorate; provided, however, that no slot machines shall be authorized to operate in the state until July 1, 2003.
The ballot title for the proposed amendment is: “AUTHORIZATION FOR COUNTY VOTERS TO APPROVE OR DISAPPROVE SLOT MACHINES WITHIN EXISTING PARI MUTUEL FACILITIES.” The summary states:
This amendment authorizes county voters to approve or disapprove, in their respective counties only, slot machines at existing pari-mutuel facilities only; requires the legislature to license, regulate and tax such slot machines and to appropriate such tax revenues to enhance senior citizen and education programs; permits voters to authorize the taxation of slot machines by simple majority vote rather than the 2/3 majority vote for new state taxes provided in article XI, section 7.
“The scope of our review is limited to an examination of whether the amendment satisfies (1) the single-subject requirement of article XI, section 3, of the Florida Constitution and (2) the ballot title and summary requirements of section 101.161, Florida Statutes (1995).” Advisory Opinion to Atty. Gen. re Fish & Wildlife Conservation Commission, -705 So.2d 1351, 1353 (Fla.1998).
SINGLE SUBJECT REQUIREMENT
Article XI, section 3 states in relevant part:
The power to propose the revision or amendment of any portion or portions of this constitution by initiative is reserved to the people, provided that, any such revision or amendment, except for those limiting the power of government to raise revenue, shall embrace but one subject and matter directly connected therewith.
As we explained in Fish & Wildlife Conservation Commission:
Of the four methods described in article XI for amending or revising the constitution, see art. XI, §§ 1-4, only the citizen initiative method in section 3 contains this single-subject requirement. This Court explained in Fine v. Firestone, 448 So.2d 984, 988 (Fla.1984), that the single-subject limitation exists because section 3 does not afford the same opportunity for public hearing and debate that accompanies the proposal and drafting processes of sections 1, 2, and 4. Accordingly, section 3 protects against multiple “precipitous” and “cataclysmic” changes in the constitution by limiting to a single subject what may be included in any one amendment proposal. In re Advisory Opinion to the Attorney General — Save Our Everglades, 636 So.2d 1336, 1339 (Fla.1994). This rule of restraint also prevents the “logrolling” of separate issues into a single proposal, which might result in the passage of an unpopular issue simply because it is paired with a widely supported one. Id. As applied, the single-subject rule requires that a proposal possess a “oneness of purpose,” which includes a determination of whether the proposal affects a function of government as opposed to a section of the constitution. Fine, 448 So.2d at 990. A proposal that affects *101 several branches of government will not automatically fail; rather, it is when a proposal substantially alters or performs the functions of multiple branches that it violates the single-subject test. Save Our Everglades, 636 So.2d at 1340.
706 So.2d at 1353-54 (footnote omitted). Upon consideration of the amendment proposed here, we conclude that it fails to meet the single-subject requirement of article XI, section 3.
Article XI, section 7, Florida Constitution, provides:
Section 7. Tax or fee limitation. — Notwithstanding Article X, Section 12(d) of this constitution, no new State tax or fee shall be imposed on or after November 8,1994 by any amendment to this constitution unless the proposed amendment is approved by not fewer than two-thirds of the voters voting in the election in which such proposed amendment is considered. For purposes of this section, the phrase “new State tax or fee” shall mean any tax or fee which would produce revenue subject to lump sum or other appropriation by the Legislature, either for the State general revenue fund or any trust fund, which tax or fee is not in effect on November 7,199k including without limitation such taxes and fees as are the subject of proposed constitutional amendments appearing on the ballot on November 8, 1994. This section shall apply to proposed constitutional amendments relating to State taxes or fees which appear on the November 8, 1994 ballot, or later ballots, and any such proposed amendment which fails to gain the two-thirds vote required hereby shall be null, void and without effect.
(Emphasis supplied.) Here, the proposed amendment mandates imposition of a state tax on slot machines-a tax which would “produce revenue subject to -... appropriation by the Legislature,” and which was “not in effect on November 7, 1994.” Cf. Kelly v. Hanson, 984 S.W.2d 540, 546 (Mo. Ct.App.1998) (determining that state funds attributed to increased cost to gambling boat licensees to pay for enforcement “staff’ rather than enforcement “representative” (as previously approved by the voters) would be included in the calculation of “total state revenues” for purposes of applying constitutional formula limiting “total state revenues”) (quoting Fort Zumwalt School Dist. v. State, 896 S.W.2d 918, 921 (Mo.1995)). Absent amendment to article XI, section 7, of the Florida Constitution, therefore, the proposed amendment requiring imposition of a tax on slot machines would be subject to the constitutional two-thirds vote requirement.
The fact that the proposed initiative includes both local authorization to approve slot machines and a mandate that such slot machines be licensed and taxed for a particular purpose is not problematic. Cf. Advisory Opinion to Atty. Gen. re Ltd. Casinos, 644 So.2d 71, 74 (Fla.1994) (citing Floridians Against Casino Takeover v. Let’s Help Florida, 363 So.2d 337 (Fla. 1978) for the proposition that the “provision requiring that anticipated tax revenues be applied to education and law enforcement properly served to implement the single-subject of casino gambling in Dade and Broward counties”). And, clearly, a majority of the voters can create a limited exemption from the supermajority voting requirement of article XI, section 7, of the Florida Constitution, for taxes authorized pursuant to a proposed amendment. Cf. Advisory Opinion to the Atty. Gen. re Tax Limitation, 644 So.2d 486,489 (Fla.1994) (approving for inclusion on the ballot an initiative proposal to remove the single-subject limitation contained in article XI, section 3, of the Florida Constitution for amendments by initiative petition *102 which would be revenue-producing). However, these two disparate provisions cannot be combined in a single initiative. Cf. Advisory Opinion to Atty. Gen. re People’s Property Rights Amendments, 699 So.2d 1304, 1310 (Fla.1997) (observing that an initiative which combines revenue limitation or methods of revenue raising and other subjects must comply with the single-subject requirement); Tax Limitation, 644 So.2d at 496 (Fla.1994) (invalidating a proposed constitutional tax limitation amendment for failure to comply with the existing single-subject limitation, even though the proposed amendment accompanied another constitutional proposal which, if passed, would remove from the constitution the single-subject limitation as applied to initiative proposals for revenue-producing amendments).[1]
The initiative considered here purports to create a mechanism for authorizing and taxing slot machines for a particular purpose in the same proposal which would effectively amend article XI, section 7, to remove this new state tax from the ambit of that provision. Because it thus fails to comport with the constitution’s single subject limitation, it is disapproved for inclusion on the ballot.
TITLE AND SUMMARY
Section 101.161, Florida Statutes (2001), describes the criteria for the ballot title and summary of a proposed constitutional amendment:
101.161. Referenda; ballots.—
(1) Whenever a constitutional amendment or other public measure is submitted to the vote of the people, the substance of such amendment or other public measure shall be printed in clear and unambiguous language on the ballot.... The wording of the substance of the amendment or other public measure and the ballot title to appear on the ballot shall be embodied in the joint resolution, constitutional revision commission proposal, constitutional convention proposal, taxation and budget reform commission proposal, or enabling resolution or ordinance.... [T]he substance of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure. The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.
As this Court has stated, “the ballot [must] be fair and advise the voter sufficiently to enable him intelligently to cast his ballot.” Askew v. Firestone, 421 So.2d 151, 155 (Fla.1982). Here, the ballot summary provides both that the amendment authorizes county voters to approve or disapprove slot machines at existing pari-mu-tuel facilities only and that, by simple majority vote “rather than the 2/3 majority vote for new state taxes provided in article XI, section 7,” the legislature will be required to “license, regulate and tax such slot machines,” and to use the proceeds for a specified purpose. As discussed above, the statement regarding article XI, section 7, is incorrect under the current constitution, and therefore misleading. This renders the summary “clearly and conclusively defective.” Florida League of Cities v. Smith, 607 So.2d 397, 399 (Fla.1992). However, we find the remaining concerns[2] *103 expressed by the Attorney General and opponents of the proposed measure to be either collateral to our review in this Advisory Opinion proceeding, cf. Advisory Opinion to Atty. Gen. re Term Limits Pledge, 718 So.2d 798, 801 n. 1 (Fla.1998) (“While we do not pass on the constitutionality of inserting a term limits pledge provision in our state constitution, we note that any provision of a state constitution that imposes qualifications on federal offices in addition to the qualifications set forth in the federal constitution is unconstitutional”), or without merit. See generally Advisory Opinion to Atty. Gen. re Prohibiting Public Funding of Political Candidates’ Campaigns, 698 So.2d 972, 975 (Fla.1997) (“[T]he title and summary need not explain every detail or ramification of the proposed amendment.”); Advisory Opinion to Atty. Gen. re Limited Casinos, 644 So.2d 71, 75 (Fla.1994) (“The seventy-five word limit placed on the ballot summary as required by statute does not lend itself to an explanation of all of a proposed amendment’s details.”); Advisory Opinion to Atty. Gen. re Tax Limitation, 673 So.2d 864, 868 (Fla.1996) (“[T]he ballot summary is not required to include all possible effects, Grose v. Firestone, 422 So.2d 303, 305 (Fla.1982), nor to ‘explain in detail what the proponents hope to accomplish.’ ”) (quoting Advisory Opinion to Atty. Gen. re English — The Official Language of Florida, 520 So.2d 11, 13 (Fla.1988)).
CONCLUSION
In conclusion, for the reasons expressed, we direct that the proposal regarding “Authorization For County Voters to Approve or Disapprove Slot Machines Within Existing Pari Mutuel Facilities” be removed from the ballot.
It is so ordered.
WELLS, C.J., and HARDING, LEWIS, and QUINCE, JJ., concur.
SHAW, ANSTEAD, and PARIENTE, JJ., dissent.

. Of course, if both proposed amendments were included, by separate initiatives, on the same ballot, and the exemption amendment failed to pass, the amendment mandating imposition of a new state tax would require a two-thirds vote for passage, in accordance with article XI, section 7, of the Florida Constitution.

. These include, inter alia, assertions that the summary fails to reflect or make clear the *103 following: (1) that county voters will not have a chance to vote to authorize slot machines at pari-mutuel facilities in the county if their county commissioners do not call a referendum; (2) that a negative local option vote will preclude a revote for two years; (3) that no slot machines can be introduced before July 1, 2003; (4) that the ballot summary refers only to "educational programs,” while the text of the amendment includes "classroom construction, educational programs, and teachers’ salaries and benefits”; (5) that the voters, having authorized slot machines in their county, either will or will not have an opportunity to reconsider that vote; (6) that "slot machines” are as defined by section 849.16(1), Florida Statutes; and (7) that there would be a collateral effect of passage of the proposed amendment on Indian gaming in the state pursuant to the federal Indian Gaming Regulatory Act, 25 U.S.C. §§ 2702-21 (2001).