PER CURIAM.
The Attorney General has requested that this Court review a proposed amendment to the Florida Constitution that would permit two Florida counties to hold referenda on whether to permit slot machines in certain parimutuel facilities. We have jurisdiction. See art. IV, § 10; art. V, § 3(b)(10), Fla. Const. For the reasons explained below, we approve the amendment and the ballot title and summary for placement on the ballot.
I. THE PROPOSED AMENDMENT AND BALLOT SUMMARY
The proposed amendment provides as follows:
Article X, Florida Constitution, is hereby amended to add the following as section 19:
SECTION 19. SLOT MACHINES—
(a) After voter approval of this constitutional amendment, the governing bodies of Miami-Dade and Broward Counties each may hold a county-wide referendum in their respective counties on whether to authorize slot machines within existing, licensed parimutuel facilities (thoroughbred and harness racing, greyhound racing, and jai-alai) that have conducted live racing or games in that county during each of the last two calendar years before the effective date of this amendment. If the voters of such county approve the referendum question by majority vote, slot machines shall be authorized in such parimutuel facilities. If the voters of such county by majority vote disapprove the referendum question, slot machines shall not be so authorized, and the question shall not be presented in another referendum in that county for at least two years.
(b) In the next regular Legislative session occurring after voter approval of this constitutional amendment, the Legislature shall adopt legislation implementing this section and having an effective date no later than July 1 of the year following voter approval of this amendment. Such legislation shall authorize agency rules for implementation, and may include provisions for the licensure and regulation of slot machines. The Legislature may tax slot machine revenues, and any such taxes must supplement public education funding statewide.
(c) If any part of this section is held invalid for any reason, the remaining portion or portions shall be severed from the invalid portion and given the fullest possible force and effect.
*523 (d) This amendment shall become effective when approved by vote of the electors of the state.
The ballot title of the proposed amendment is “Authorizes Miami-Dade and Broward County Voters to Approve Slot Machines in Parimutuel Facilities.” The ballot summary provides as follows:
Authorizes Miami-Dade and Broward Counties to hold referenda on whether to authorize slot machines in existing, licensed parimutuel facilities (thoroughbred and harness racing, greyhound racing, and jai alai) that have conducted live racing or games in that county during each of the last two calendar years before effective date of this amendment. The Legislature may tax: slot machine revenues, and any such taxes must supplement public education funding statewide. Requires implementing legislation.
II. STANDARD AND SCOPE OF REVIEW
Our review of the validity of an amendment to the Florida Constitution proposed by initiative for placement on the ballot is limited to two issues: (1) whether the proposed amendment satisfies the single-subject limitation of article XI, section 3 of the Florida Constitution, and (2) whether the ballot title and summary satisfy the requirements of section 101.161(1), Florida Statutes (2003). Advisory Op. to the Att’y Gen. re Fish & Wildlife Conservation Comm’n, 705 So.2d 1351, 1353 (Fla.1998). “The Court must act with extreme care, caution, and restraint before it removes a constitutional amendment from the vote of the people,” and thus must approve an initiative unless it is clearly and conclusively defective. Askew v. Firestone, 421 So.2d 151, 154, 156 (Fla.1982); see also Smith v. Coalition to Reduce Class Size, 827 So.2d 959, 963 (Fla.2002) (stating that if the initiative meets constitutional requirements, “then the sponsor of an initiative has the right to place the initiative on the ballot”). Finally, the Court does not review the merits or the wisdom of the proposed amendment. Advisory Op. to the Att’y Gen. re Right of Citizens to Choose Health Care Providers, 705 So.2d 563, 565 (Fla.1998).
III. THE SINGLE-SUBJECT REQUIREMENT
Article XI, section 3 of the Florida Constitution requires that an amendment proposed by initiative “shall embrace but one subject and matter directly connected therewith.” This single-subject requirement “allow[s] the citizens to vote on singular changes in our government that are identified in the proposal and to avoid voters having to accept part of a proposal which they oppose in order to obtain a change which they support.” Fine v. Firestone, 448 So.2d 984, 993 (Fla.1984). Additionally, it “prevents] a single constitutional amendment from substantially altering or performing the functions of multiple aspects of government.” Advisory Op. to the Att’y Gen. re Florida Transp. Initiative for Statewide High Speed Monorail, Fixed Guideway or Magnetic Levitation Sys., 769 So.2d 367, 369 (Fla.2000). In determining compliance with the single-subject requirement, this Court examines the amendment to determine whether it evinces a “logical and natural oneness of purpose.” Fine, 448 So.2d at 990 (citing City of Coral Gables v. Gray, 154 Fla. 881, 19 So.2d 318, 320 (1944), and stating that “in determining whether a proposal addresses a single subject the test is whether it ‘may be logically viewed as having a natural relation and connection as component parts or aspects of a single dominant plan or scheme’ ” and that “ ‘[ujnity of object and plan is the universal test’ ”).
*524 The opponents[1] to the proposed amendment contend that the proposed amendment violates the single-subject requirement in two ways: (A) it “logrolls” together authorizing slot machines and allocating any taxes on them to support education; and (B) it amends without notice the present lottery provisions of the Florida Constitution. We address each argument in turn.
A. Does the Amendment Logroll the Authorization of Slot Machines and Taxes on Them?
The opponents first argue that the amendment “logrolls” together two separate and unrelated purposes: authorizing slot machines and allocating any taxes on them to support education. The claim is based on the proposed amendment’s provision that “[t]he Legislature may tax slot machine revenues, and any such taxes must supplement public education funding statewide.” As the proponent[2] responds, however, this Court previously has held that such a provision does not violate the single-subject requirement.
In Floridians Against Casino Takeover v. Let’s Help Florida, 363 So.2d 337, 338 (Fla.1978), this Court reviewed an initiative intended to permit the operation of casinos in a limited area of the State. The amendment provided that taxes on such casinos “shall be collected by the State and appropriated ... for the support and maintenance of the free public schools and local law enforcement.” We rejected the argument that this provision violated the single-subject requirement:
Just as the Court in Weber[v. Smathers, 338 So.2d 819 (Fla.1976) ] concluded that financial disclosure and loss of pension are elements within the ambit of a single subject — ethics in government— so is the generation and collection of taxes, and the distribution thereof, part and parcel of the single subject of legalized casino gambling.
363 So.2d at 340. Although we subsequently receded from Floridians Against Casino Takeover on another ground in Fine, 448 So.2d at 988, we did not recede from the single-subject holding. In fact, we later reaffirmed it in Carroll v. Firestone, 497 So.2d 1204 (Fla.1986). In Car-rol, we reviewed an initiative authorizing the State to operate lotteries and providing that “[n]et proceeds derived from the lotteries shall be deposited to a state trust fund, to be designated The State Education Lotteries Trust Fund, to be appropriated by the Legislature.” See art. X, § 15, Fla. Const. (authorizing state-operated lotteries). We held that the amendment did not violate the requirement of “one subject and matter directly connected therewith,” finding “no essential distinction” between that amendment and the one we approved in Floridians Against Casino Takeover. Carroll, 497 So.2d at 1206.
Finally, last year we considered a similar proposed amendment to authorize slot machines. Advisory Op. to the Att’y Gen. re Authorization for County Voters to Approve or Disapprove Slot Machines within Existing Pari-Mutuel Facilities, 813 So.2d 98 (Fla.2002). That initiative provided that the “legislature, by general law, shall appropriate tax revenue derived from slot machines to enhance senior citizen services, classroom construction, education programs, and teachers’ salaries and benefits.” Id. at 99. Although we disapproved *525 the proposed amendment for inclusion on the ballot,[3] in addressing this tax allocation provision we opined that “[t]he fact that the proposed initiative includes both local authorization to approve slot machines and a mandate that such slot machines be licensed and taxed for a particular purpose is not problematic.” Id. at 101.
In light of this unwavering line of decisions from this Court on this issue, we hold that the tax allocation provision in the proposed amendment before this Court does not violate the single-subject requirement.
B. Does the Amendment Amend Without Notice the Current Lottery Provisions of the Florida Constitution?
The opponents next contend that the proposed amendment violates the single-subject requirement because it addresses local authorization of slot machines and amends — without notice of this effect — the present lottery provisions of the Florida Constitution. Two constitutional provisions apply to our analysis. Article X, section 7 prohibits lotteries other than those already authorized by law at the time the constitution became effective. It provides: “Lotteries, other than the types of pari-mutuel pools authorized by law as of the effective date of this constitution, are hereby prohibited in this state.” Art. X, § 7, Fla. Const. Article X, section 15, on the other hand, permits the State to operate lotteries. It provides as follows:
(a) Lotteries may be operated by the state.
(b) If any subsection or subsections of the amendment to the Florida Constitution are held unconstitutional for containing more than one subject, this amendment shall be limited to subsection (a) above.
(c)This amendment shall be implemented as follows:
(1) Schedule — On the effective date of this amendment, the lotteries shall be known as the Florida Education Lotteries. Net proceeds derived from the lotteries shall be deposited to a state trust fund, to be designated The State Education Lotteries Trust Fund, to be appropriated by the Legislature. The schedule may be amended by general law.
The crux of the opponents’ argument is that slot machines constitute a form of lottery. Therefore, the proposed amendment would amend these lottery provisions by conferring on two counties the power to establish lotteries. We disagree.
We have long since settled the question of whether slot machines constitute lotteries. In Lee v. City of Miami, 121 Fla. 93, 163 So. 486, 490 (1935), we addressed the question of whether certain legislatively described gambling machines, such as slot machines, constituted lotteries prohibited by the state constitution. We concluded they did not. We noted that the “Legislature recognized the distinction between lotteries and other species of gambling” and had never defined “lottery” “to include other forms of gambling.” Id. We then concluded the “primary test” for a lottery prohibited by the constitution “was whether or not the vice of it infected the whole community or country, rather than individual units of it.” Id. We reaffirmed Lee in a case in which the defendant, who kept a slot machine in his business, was charged with the crime of conducting a lottery. See Hardison v. Coleman, 121 Fla. 892, 164 So. 520, 521-22 (1935). Reiterating that a slot machine is not a lottery, we stressed that “[i]t may be true that every *526 lottery is a game or gambling device, but it does not follow that every game or gambling device is a lottery within the meaning of’ the constitutional prohibition of lotteries. Id. at 522. Further, the Florida Statutes continue to differentiate the two. See § 849.09, Fla. Stat. (2003) (prohibiting “persons” from conducting or promoting lotteries); id. § 849.15 (prohibiting ownership or use of slot machines); id. § 849.16(1) (defining “slot machine”). Accordingly, the proposed amendment does not amend the lottery provisions of the state’s constitution.
IV. REVIEW OF BALLOT TITLE AND SUMMARY
We must also review the ballot title and summary to confirm that they comply with legal requirements. Section 101.161(1), Florida Statutes (2003), requires that the ballot caption not exceed fifteen words, that the ballot summary not exceed seventy-five words, and that the two clearly and unambiguously provide an explanation of the “chief purpose” of the measure. See Askew, 421 So.2d at 154-55. “This requirement provides the voters with fair notice of the contents of the proposed initiative so that the voter will not be misled as to its purpose and can cast an intelligent and informed ballot.” Advisory Op. to the Att’y Gen. re People’s Property Rights Amendments Providing Compensation for Restricting Real Property Use May Cover Multiple Subjects, 699 So.2d 1304, 1307 (Fla.1997); see also Askew, 421 So.2d at 155 (“Simply put, the ballot must give the voter fair notice of the decision he must make.”). We must therefore determine whether the ballot title and summary are misleading. See Advisory Op. to the Att’y Gen. re Right of Citizens to Choose Health Care Providers, 705 So.2d 563, 566 (Fla.1998).
The ballot summary and title meet the statutory word limitations. The opponents to the proposed amendment contend, however, that the ballot summary is defective for three reasons: (A) it fails to inform voters that deauthorization of slot machines would require another constitutional amendment; (B) it fails to inform voters of the proposed amendment’s effect on the extant constitutional provisions concerning lotteries; and (C) it fails to inform voters that the amendment authorizes the Legislature to license and regulate slot machines. We address these in turn.
A. Is the Ballot Summary Defective Because It Fails to Inform Voters that Deauthorization of Slot Machines Would Require Another Constitutional Amendment?
The opponents first argue that the summary fails to inform voters that de-au-thorization of slot machines would require another constitutional amendment. See Askew, 421 So.2d at 156 (holding the ballot summary defective and commenting that “[t]he problem, therefore, lies not with what the summary says, but, rather, with what it does not say”). Last year we rejected this same argument as to the similar proposed amendment authorizing referenda to permit slot machines. See Advisory Op. to the Att’y Gen. re Authorization for County Voters to Approve or Disapprove Slot Machines, 813 So.2d at 102-03 & n. 2. Further, the amendment does not expressly prohibit deauthorization, and the amendment’s silence on deauthorization cannot fairly be read as containing such a prohibition.
B. Is the Ballot Summary Defective Because It Fails to Inform Voters of the Proposed Amendment’s Effect on the Extant Constitutional Provisions Concerning Lotteries?
Next, the opponents argue that the ballot summary is defective because it fails to *527 inform voters of the proposed amendment’s effect on the extant constitutional provisions concerning lotteries. See art. X, §§ 7, 15, Fla. Const. As we have explained, the proposed amendment does not affect these provisions because slot machines are not lotteries. Thus, the ballot summary need not mention them.
C. Is the Ballot Summary Defective Because It Fails to Inform Voters that the Amendment Authorizes the Legislature to License and Regulate Slot Machines?
Finally, the opponents claim that the summary fails to inform voters that the amendment authorizes the Legislature to license and regulate slot machines. The proposed amendment requires the Legislature to adopt implementing legislation and to “authorize agency rules for implementation, and may include provisions for the licensure and regulation of slot machines.” This provision, however, is collateral to the “chief purpose” of the amendment, which the ballot summary must provide in less than seventy-six words. See Advisory Op. to the Att’y Gen. re Prohibiting Public Funding of Political Candidates’ Campaigns, 693 So.2d 972, 975 (Fla.1997) (stating summary is not required to “explain every detail or ramification of the proposed amendment”). We conclude that the ballot summary in this case explains the “chief purpose” of the proposed amendment and meets the requirements of section 101.161(1), Florida Statutes.
V. CONCLUSION
For the reasons stated, we hold that the initiative petition and proposed ballot title and summary meet the legal requirements of article XI, section 3 of the Florida Constitution, and section 101.161(1), Florida Statutes (2003). Accordingly, we approve the amendment for placement on the ballot. We note, however, that no other issue is addressed here and this opinion should not be construed as expressing either favor for or opposition to the proposed amendment.
It is so ordered.
ANSTEAD, C.J., and WELLS, PARIENTE, LEWIS, QUINCE, CANTERO and BELL, JJ., concur.
WELLS, J., concurs specially with an opinion, in which ANSTEAD, C.J., and BELL, J., concur.
BELL, J., concurs specially with an opinion, in which ANSTEAD, C.J., and LEWIS, J., concur.

. The opponents of the proposed amendment, who filed a brief in this cause, are the American Society for the Prevention of Cruelty to Animals, Grey2K USA, The Humane Society of the United States, and No Casinos, Inc.

. The group sponsoring the proposed amendment is called Floridians for a Level Playing Field.

. This Court found that another of the taxing provisions did violate the single-subject requirement. 813 So.2d at 102. No similar provision appears in this initiative.