BILBREY, J.,
concurring in pari and in result. '
Following the retirement of the Honorable Nikki Clark from this Court the “luck of the draw”[8] has placed me on the three judge panel assigned to consider the motion for rehearing. While there is no clear guidance on the appropriate standard the successor judge is to apply when passing on a motion for rehearing, my decision to grant rehearing is based on the following considerations.
Certainly, the judgment of a retired colleague is entitled to some deference. In considering the authority of a' successor trial judge, the Florida Supreme Court has stated:
While a judge should hesitate to undo his own work, and should hesitate still more to undo the work of another judge, he does have, until final judgment, the power to do so and may therefore vacate or modify the Interlocutory rulings or orders of his predecessor in the case. This ‘code’' of restraint is not based solely on the law of the cáse but is founded upon considerations of comity and courtesy. , ’
Tingle v. Dade County. Bd. of County Com’rs, 246 So.2d 76, 78 (Fla.1971).[9] I believe such a code of restraint applies to an appellate judge as well. .Nevertheless, only deference is required, and a successor judge is not required to always vote identically., to the predecessor on rehearing. “Nor is the Court, to borrow a famous phrase, a potted plant.” United States v. HSBC Bank , USA, N.A., 2013 WL 3306161, *5 (E.D.N.Y.2013) (citation omitted). After all, it is not uncommon for any judge to change his or her mind when faced with a motion for rehearing.[10]
*31 Given that I believe that a.successor judge has some discretion in considering a motion for rehearing, but should be hesitant to do so, the next issue is the appropriate standard any judge should apply to such a motion. Rule 9.330(a), Florida Rules of Appellate Procedure, provides in part, “[a] motion for rehearing shall state with particularity the points of law or fact that, in the opinion of the movant, the court has overlooked or misapprehended in its decision.” Furthermore, “[a] motion for rehearing must address some error or omission in the resolution of an issue previously presented in the main argument.” Phillip J. Padovano, Florida Appellate Practice § 21:2 (2015).
It is clear that the original 'panel decision did not overlook any points of law or fact. Judge Benton’s detailed, ■ original majority decision squarely addressed all of the issues which the parties raised. The other basis then to grant rehearing would be if the original decision misapprehended some point of law or fact.[11] This provision of rule 9.330(a) gives me greater leeway and greater comfort in agreeing that' it is appropriate to grant rehearing.
I respectfully disagree with . Judge’s Benton’s reading of section 551.102(4), Florida Statutes. More particularly, I conclude that hé has misapprehended the third clause of the statute which defines an eligible facility. I find Judge Makar’s discussion of the plain reading approach and the last antecedent doctrine in section II.B. particularly persuasive. “In construing a statute, we look first to the statute’s plain meaning.” Moonlit Waters Apts., Inc. v. Cauley, 666 So.2d 898, 900 (Fla. 1996). “[Relative and qualifying words, phrases and clauses are to be applied to the words or phrase immfediately preceding, and are not to be construed as extending to, or including, others more remote.” City of St. Petersburg v. Nasworthy, 751 So.2d 772, 774 (Fla. 1st DCA 2000).[12] *32 Plainly, the “after the effective date’of this section” language in section 551.102(4) modifies the immediately ■ preceding “a statutory or constitutional authorization” phrase, and not the more remote “referendum held” phrase.
The misapprehension in the original decision as what qualifies as an “eligible facility” is very significant. As noted in footnote 6 of Judge Makar’s opinion, if the original decision were to stand, seventeen Florida Counties would be eligible to conduct referenda on slot machine expansion and potentially allow slot machines in contravention of the will of the Florida Legislature as expressed by the Seminole Compact. Rehearing is therefore necessary to address this misapprehension.
I therefore fully concur in those parts of Judge Makar’s opinion regarding the interpretation of section 551.102(4), Florida Statutes. Specifically, I join in sections I. D., II. B., II. C., and III. I also concur in the result which Judge Makar reaches, and with the certified question.
While I agree that the dicta in Greater Loretta Improvement Ass’n. v. State ex rel. Boone, 234 So.2d 665, 671-72 (Fla. 1970), unnecessarily calls into question the ability of the Legislature to regulate slot machines, I also agree with Judge Benton that the settled state ,of the law in Florida is that slot machines are not lotteries and therefore may be regulated (and legalized) by the Legislature without running afoul of article X, section 7 of the Florida Constitution. See Advisory Op. to the Att’y Gen. re Authorizes Miami-Dade and Bro-ward County Voters to Approve Slot Machines in Parimutuel Facilities, 880 So.2d 522 (Fla.2004) (citing Lee v. City of Miami, 121 Fla. 93, 163 So. 486, 490 (1935)); see also Florida Gaming Centers, Inc. v. Florida Dept. of Bus. and Prof'l. Regulation, 71 So.3d 226 (Fla. 1st DCA 2011). Because I read Judge' Makar’s decision as not being predicated on this constitutional issue; 1 find it unnecessary to dissent in part”.

, See In re Doe 13-A, 136 So,3d 748, 756 (Fla, 1st DGA 2014) (Swanson, J., dissenting on •denial of rehearing en banc).

. At the appellate level a case is not final until the mandale issues. Washington v. State, 637 Se.2d 296 (Fla. 1994). The mandate has not issued here, and the motion for rehearing was timely filed.

. I have been in the position of successor judge on a motion for rehearing on many occasions in my brief time on this Court, and although I'may have decided some of those eases differently had I been on the original panel, until today I only thought that rehearing was appropriate in one case. See Morales v. State, 170 So.3d 63 (Fla. 1st DCA 2015) (Bilbrey, J.,.concurring). I believe consideration can be given to whether the original. *31 decision was a substantial departure from established law and how important the issue was which the original panél decided. I also think that the decision of a supermajority of this Court to abate the vote on whether to grant en banc review pending a decision on the motion for rehearing, shows that my colleagues believe I have some level of autonomy in considering the motion.

. "Misapprehend” or "misapprehended” is not defined the Florida Rules of Appellate Procedure or in - Black's Law Dictionary. "Misapprehend” is defined by the Oxford English Dictionary (2nd ed.1989) as “to apprehend wrongly: not to understand rightly; to attach a wrong meaning to,’'’ The Merriam-Webster Online. Dictionary defines misapprehend as “to apprehend wrongly: misunderstand.” Merriam-Webster, http://www, rnerriam-webster.com (last visited August 13, 2015).

, The best argument for Judge Benton’s reading of the statute is his observation that the third clause of section of section 551.102(4) is rendered meaningless if read in the manner suggested by the Department. Perhaps, however, the- Legislature included the third claus.e in order to prevent the statute being deemed a special law, which is prohibited by article III, section 10 of the Florida Constitution. Sea Dep't of Bus. & Prof‘l Regulation v. Gulfstream Park'Racing Ass'n., Inc., 967 So.2d 802 (Fla,2007) (explaining a statute .is unconstitutional, as a-special law, if it is a law which relates to or operates upon particular persons of things); Dep't of Bus. Regulation v. Classic Mile,, Inc., 541 So.2d 1155 (Fla.1989). When the third clause was enacted, the second clause was also enacted. Ch. 2009-170, § 19, Laws of Fla. Without the third clause, section 551,102(4) would have no potential State-wide application beyond Miami-Dado and Broward counties, Furthermore, Judge Benton’s reading of the third clause Is inconsistent with entire Seminole Compact authorization also contained in Chapter 2009-170, Laws of Florida, which offered to grant the Seminole Tribe of Florida exclusivity over all slot machines outside of Miami-Dado and Broward Counties, Why would the Legislature offer the Seminole Tribe exclusivity over slot machines while at the same time authorizing up to seventeen *32 Florida Counties the ability to intrude on this exclusivity? By my reading of section 551.104(4), it did not.