# Supreme Court of Florida

_____

No. SC19-1536

_____

**ADVISORY OPINION TO THE ATTORNEY GENERAL RE: REGULATE MARIJUANA IN A MANNER SIMILAR TO ALCOHOL TO ESTABLISH AGE, LICENSING, AND OTHER RESTRICTIONS.**

June 17, 2021

PER CURIAM.

The Attorney General of Florida has requested this Court's opinion concerning the validity of an initiative petition circulated pursuant to article XI, section 3 of the Florida Constitution. We have jurisdiction, *see* art. IV, § 10, art. V, § 3(b)(10), Fla. Const., and conclude that because the ballot summary is affirmatively misleading, the proposed initiative should not be placed on the ballot.

## BACKGROUND

On September 11, 2019, the Attorney General petitioned this Court for an advisory opinion regarding the validity of an initiative

petition sponsored by Sensible Florida, Inc. (the Sponsor) and titled "Regulate Marijuana in a Manner Similar to Alcohol to Establish Age, Licensing, and Other Restrictions." The Attorney General asks whether the proposed amendment complies with the single-subject requirement of article XI, section 3 of the Florida Constitution, and whether the ballot title and summary comply with the clarity requirements of section 101.161(1), Florida Statutes (2020). The Attorney General submitted a brief opposing the initiative petition. Opposing briefs were also submitted by: (1) the Florida House of Representatives; and (2) the Florida Chamber of Commerce, the Drug Free America Foundation, the National Drug-Free Workplace Alliance, and Save Our Society from Drugs. The Sponsor filed a brief in support of the initiative petition. And oral argument was held on February 4, 2020.

**Text of the Proposed Amendment**

The proposed amendment, which claims it would add a new section 29 to article X of the Florida Constitution,[1] reads as follows:

---

1. Article X, section 29 of the Florida Constitution already exists and addresses medical marijuana. The proposed amendment at issue here was drafted before section 29 was added to article X.

ARTICLE X, SECTION 29. Florida Cannabis Act —

(a) Purpose and findings.
    (1) Short title. On the effective date of this amendment, it shall be known as the "Florida Cannabis Act."
    (2) In the interest of the efficient use of law enforcement resources, enhancing revenue for public purposes, and individual freedom, the people of the State of Florida find and declare that the use of cannabis should be legal for persons twenty-one years of age or older.
    (3) In the interest of the health and public safety of our citizenry, the people of the State of Florida further find and declare cannabis should be regulated in a manner similar to alcohol so that:
        a. Consumers will have to show proof of age before purchasing cannabis;
        b. Selling, distributing, or transferring cannabis to minors under the age of twenty-one shall remain illegal;
        c. Driving while impaired under the influence of cannabis shall remain illegal;
        d. Only legitimate, taxpaying business people will conduct sales of cannabis; and
        e. Cannabis sold in this state will be labeled and subject to additional regulations to ensure consumers are informed and protected.
    (4) The people of the State of Florida further find and declare it is necessary to ensure consistency and fairness in the application of this section throughout the state and that, therefore, the matters addressed by this section are, except as specified herein, matters of statewide concern.
(b) Definitions. As used in this section, unless the context otherwise requires:
    (1) "Applicant" means an individual person or any form of business that applies for a license to operate a cannabis establishment. Any person or business

entity may hold multiple licenses, providing each license be applied for and renewed individually and independently of any other license.

(2) "Business entity" means any form of business operation recognized under Florida law, including partnership that is registered to do business in Florida prior to filing for a license to operate a cannabis establishment.

(3) "Cannabis" means all parts of the plant of the genus Cannabis, as defined in s. 893.02(3), Florida Statutes (2016). Nothing in this definition or this section shall be deemed to permit or prohibit the cultivation of the plant of the genus Cannabis as a raw material for use of its fiber or pectin, or its structural polymers (the polysaccharides cellulose and hemicelluloses and the aromatic polymer lignin) for any industrial purpose, including the preparation of functionalized textiles, or for any purpose other than human consumption.

(4) "Cannabis cultivation facility" means an entity licensed to cultivate, prepare, and package cannabis and sell cannabis to retail cannabis stores, to cannabis product manufacturing facilities, and to other cannabis cultivation facilities, but not to consumers.

(5) "Cannabis establishment" means a cannabis cultivation facility, a cannabis testing facility, a cannabis product manufacturing facility, or a retail cannabis store.

(6) "Cannabis plant" means a plant, including, but not limited to, a seedling or cutting. To determine if a piece or part of a cannabis plant severed from the cannabis plant is itself a cannabis plant, the severed piece or part must have some readily observable evidence of root formation, such as root hairs. Callous tissue is not readily observable evidence of root formation. The viability and sex of a plant and the fact that the plant may or may not

be a dead harvested plant are not relevant in determining if the plant is a cannabis plant.

(7) "Cannabis product manufacturing facility" means an entity licensed to purchase cannabis; manufacture, prepare, and package cannabis products; and sell cannabis and cannabis products to other cannabis product manufacturing facilities and to retail cannabis stores, but not to consumers.

(8) "Cannabis products" means concentrated cannabis products and cannabis products that are comprised of cannabis and other ingredients intended for human consumption or human topical application, including but not limited to, edible products, infused products, ointments, and tinctures.

(9) "Cannabis testing facility" means an entity licensed to analyze and certify the safety and potency of cannabis.

(10) "Consumer" means a person twenty-one years of age or older who purchases cannabis or cannabis products for personal use by persons twenty-one years of age or older, but not for resale to others. Consumer does not include any form of business entity, partnership, or incorporation.

(11) "Corporation" means any form of business entity, partnership, joint venture, limited liability company, cooperative, or other manner of incorporation.

(12) "County" means a political subdivision of the state established pursuant to s. 1, Art. VIII of the State Constitution.

(13) "Department" means the Florida Department of Business & Professional Regulation or its successor agency.

(14) "Florida Cannabis Act" means this section of the Florida Constitution, and as may be codified.

(15) "Municipality" means a municipality created under general or special law or recognized pursuant to s. 2 or s. 6, Art. VIII of the State Constitution.

(16) "Retail cannabis store" means an entity licensed to purchase cannabis from cannabis cultivation facilities and cannabis products from cannabis product manufacturing facilities and to sell cannabis and cannabis products to consumers.

(c) Personal use of cannabis. Notwithstanding any other provision of law, the following acts are not unlawful and shall not be an offense under Florida law or the law of any county or municipality within Florida or be a basis for seizure or forfeiture of assets under Florida law for persons twenty-one years of age or older. These are minimum quantities, subject to increase by state, county, or municipal legislation, but not subject to decrease:

(1) Possessing, using, displaying, purchasing, or transporting cannabis, and cannabis products in quantities reasonably indicative of personal use or for use by household members;

(2) Growing six mature flowering cannabis plants per household member twenty-one years of age or older and possessing the harvest therefrom, provided the growing takes place indoors or in a locked greenhouse and the cannabis grown is not made available for sale; outdoor growing for personal consumption is not herein permitted statewide, but may be permitted locally if approved by legislation created at the county or municipal level; nothing in this subsection shall prevent the state legislature from creating laws that permit outdoor growing for personal consumption;

(3) Transfer of one ounce or less of cannabis without remuneration to a person who is twenty-one years of age or older;

(4) Allowing or restricting consumption of cannabis within a private business establishment or on its premises consistent with this section; or

(5) Assisting another person who is twenty-one years of age or older in any of the acts described in paragraphs (1) through (5) of this subsection.

(d) Lawful operation of cannabis establishment. Notwithstanding any other provision of law, the following acts are not unlawful and shall not be an offense under Florida law or be a basis for seizure or forfeiture of assets under Florida law for persons twenty-one years of age or older:

(1) Possessing, displaying, or transporting cannabis or cannabis products; purchase of cannabis from a cannabis cultivation facility; purchase of cannabis or cannabis products from a cannabis product manufacturing facility; or sale of cannabis or cannabis product to consumers, if the person conducting the activities described in this subsection has obtained a current, valid license to operate a retail cannabis store or is acting in his or her capacity as an owner, employee or agent of a licensed retail cannabis store;

(2) Cultivating, harvesting, processing, packaging, transporting, displaying, or possessing cannabis; delivery or transfer of cannabis to a cannabis testing facility; selling cannabis to a cannabis cultivation facility, a cannabis product manufacturing facility, or a retail cannabis store; or the purchase of cannabis from a cannabis cultivation facility, if the person conducting the activities described in this subsection has obtained a current, valid license to operate a cannabis cultivation facility or is acting in his or her capacity as an owner, employee, or agent of a licensed cannabis cultivation facility;

(3) Packaging, processing, transporting, manufacturing, displaying, or possessing cannabis or cannabis products; delivery or transfer of cannabis or cannabis products to a cannabis testing facility; selling cannabis or cannabis products to a retail cannabis store or a cannabis product manufacturing facility; the purchase of cannabis from a cannabis cultivation facility; or the purchase of cannabis or cannabis products from a

cannabis product manufacturing facility, if the person conducting the activities described in this subsection has a current, valid license to operate a cannabis product manufacturing facility or is acting in his or her capacity as an owner, employee, or agent of a licensed cannabis product manufacturing facility;

(4) Possessing, cultivating, processing, repackaging, storing, transporting, displaying, transferring or delivering cannabis or cannabis products in connection with testing activities, if the person has obtained a current, valid license to operate a cannabis testing facility or is acting in his or her capacity as an owner, employee, or agent of a licensed cannabis testing facility; or

(5) Leasing or otherwise allowing the use of property owned, occupied or controlled by any person, corporation or other entity for any of the activities conducted lawfully in accordance with paragraphs (1) through (5) of this subsection.

(e) Regulation of cannabis.

(1) No later than 6 months from the effective date, the department shall adopt regulations necessary for implementation of this section to include:

a. Procedures for the issuance, renewal, suspension, and revocation of a license to operate a cannabis establishment, with such procedures subject to all requirements of s. 120.54, Florida Statutes (2016) or as amended;

b. Any license issued to an individual person shall only be issued to a person of good moral character who is not less than twenty-one years of age and who has resided in the United States for the preceding five years and who has been a U.S. citizen for the preceding five years or has established lawful permanent residence in the United States for the preceding five years as evidenced by a "Green Card" and has

resided in the United States for the preceding five years.

c. Any license issued to a business entity shall only be issued to a business entity of which all directors of a corporate applicant, members of a limited liability applicant, partners of a partnership applicant, or joint venturors of a joint venture applicant are of good moral character, are not less than twenty-one years of age, and at least 75% thereof have resided in the United States for the preceding five years and have been a U.S. citizen for the preceding five years or have established lawful permanent residence in the United States for the preceding five years as evidenced by a "Green Card" and have resided in the United States for the preceding five years;

d. That in the case of an individual applicant, any license shall be issued only to a person who has been domiciled in the State of Florida for at least 6 months immediately prior to applying;

e. That in the case of a business entity applicant, any license shall be issued only to business entities that can show at least 25% of the directors, members, partners, or joint venturor applicants have been domiciled in the State of Florida for at least 6 months immediately prior to applying;

f. That no license under this section shall be issued to any person, director, member, partner, or joint venturor who has been convicted of a felony offense, except that [sic] if the licensing authority determines that the applicant or licensee is otherwise suitable to be issued a license and granting the license would not compromise public safety. In making this determination the licensing authority shall conduct a thorough review of the nature of the

crime, conviction, circumstances, and evidence of rehabilitation of the applicant, and shall evaluate the suitability of the applicant or licensee to be issued a license based on the evidence found through the review. In determining which offenses are substantially related to the qualifications, functions, or duties of the business or profession for which the application is made, the licensing authority shall include any felony conviction.

g. In the case of a business entity applicant, the requirements stated in this subsection shall apply to each and every director, member, partner, or joint venturor in a business entity, but not to persons that are solely investors or owners; and

h. The department may suspend or revoke a license under this section, or may refuse to issue a license under this section to:

1. Any person, firm, or corporation the license of which under this section has been revoked or has been abandoned after written notice that revocation or suspension proceedings had been or would be brought against the license;

2. Any corporation if an officer or director of the corporation has had her or his license under this section revoked or has abandoned her or his license after written notice that revocation or suspension proceedings had been or would be brought against her or his license; or

3. Any person who is or has been an officer or director of a corporation, or who directly or indirectly closely held an ownership interest in a corporation, the license of which has been revoked or abandoned after written notice that revocation or suspension proceedings had

been or would be brought against the license.

i. Security requirements for cannabis establishments;

j. Requirements to prevent the sale or diversion of cannabis and cannabis products to persons under the age of twenty-one;

k. Labeling and packaging requirements for cannabis and cannabis products sold or distributed by a cannabis establishment;

1. Health and safety regulations and standards for the manufacture and testing of cannabis products and the cultivation of cannabis;

m. Guidelines on the advertising and display of cannabis and cannabis products; and

n. Civil penalties for the failure to comply with regulations made pursuant to this section.

(2) In order to protect consumer privacy, the department shall not require a consumer to provide a retail cannabis store with personal information other than government-issued identification to determine the consumer's age, and a retail cannabis store shall not be required to acquire and record personal information about consumers other than information typically acquired in a financial transaction conducted at a retail liquor store.

(3) Nothing contained in this section shall be construed to create nor in any way limit any taxing authority to make, collect, administer, enforce or distribute any tax levy relating to this section under any taxing authority's power to tax authorized by the constitution or the laws of this state.

(4) No later than 6 months from the effective date, each county or municipality shall enact an ordinance or regulation specifying the entity within the county or municipality responsible for processing applications submitted for a license to operate a cannabis establishment within the boundaries of the county or municipality and for the

issuance of any such license should the issuance by the county or municipality become necessary because of a failure by the department to adopt regulations pursuant to subsection (e)(1) or failure by the department to process a license application in accordance with subsection (e)(6).

(5) A county or municipality may enact ordinances or regulations not in conflict with this section or state regulations or legislation.

    a. Governing the time, place, manner, and number of cannabis establishment operations;

    b. Establishing procedures for the issuance, suspension, and revocation of a license issued by the county or municipality in accordance with subsections (e)(7) or (e)(8), such procedures to be subject to all requirements of s. 120.54, Florida Statutes (2016) or as amended; and

    c. Establishing civil penalties for violation of an ordinance or regulation governing the time, place, and manner of a cannabis establishment that may operate in such county or municipality, whether licensed by the state, a county or municipality.

(6) Each application for an annual license to operate a cannabis establishment shall be submitted to the department. The department shall:

    a. Begin accepting and processing applications 6 months from the effective date;

    b. Upon request by the county or municipality, immediately forward a copy of each application to the county in which the applicant desires to operate;

    c. Issue an annual license to the applicant between forty-five and ninety days after receipt of an application unless the department finds the applicant is not in compliance with regulations enacted pursuant to subsection (e)(1) or the department is notified by the

relevant county or municipality that the applicant is not in compliance with subsection (e)(5) in effect at the time of application, provided, where a county or municipality has enacted a numerical limit on the number of cannabis establishments and a greater number of applicants seek licensing, the department shall solicit and consider input from the county or municipality as to the county or municipality's preference for licensure; and

d. Upon denial of an application, notify the applicant in writing of the specific reason for its denial.

(7) If the department does not issue a license to an applicant within ninety days of receipt of the application filed in accordance with subsection (e)(6) and does not notify the applicant of the specific reason for its denial, or the specific reason as to why the applicant is not in compliance with regulations enacted pursuant to subsection (e)(1), in writing, within such time period, the applicant may resubmit the application directly to the county or municipality, pursuant to subsection (e)(5), and the county or municipality may issue an annual license to the applicant. A county or municipality issuing a license to an applicant shall do so within ninety days of receipt of the resubmitted application unless the county or municipality finds and notifies the applicant that the applicant is not in compliance with ordinances and regulations made pursuant to subsection (e)(5) in effect at the time the application is resubmitted. The county or municipality shall notify the department if an annual license has been issued to the applicant. A license issued by a county or municipality in accordance with this subsection shall have the same force and effect as a license issued by the department in accordance with subsection (e)(6). A subsequent or renewed

license may be issued under this subsection on an annual basis only upon resubmission to the county or municipality of a new application submitted to the department pursuant to subsection (e)(6), if the department does not issue a license to an applicant within ninety days of receipt of the application for a subsequent or renewed annual license filed in accordance with subsection (e)(6) and does not notify the applicant of the specific reason for its denial, or the specific reason as to why the applicant is not in compliance with regulations enacted pursuant to subsection (e)(1), in writing, within such time period.  Nothing in this subsection shall limit such relief as may be available to an aggrieved party under ss. 120.56, 120.565, 120.569, 120.57, 120.573, or 120.574, Florida Statutes (2016) or as amended.

(8) If the department does not adopt regulations in accordance with subsection (e)(1), an applicant may submit an application directly to a county or municipality after 6 months from the effective date, and the county or municipality may issue an annual license to the applicant.  A county or municipality issuing a license to an applicant shall do so within ninety days of receipt of the application, unless it finds and notifies the applicant that the applicant is not in compliance with ordinances and regulations made pursuant to subsection (e)(5) in effect at the time of application, and shall notify the department if an annual license has been issued to the applicant.  A license issued by a county or municipality in accordance with this subsection shall have the same force and effect as a license issued by the department in accordance with subsection (e)(6).  A subsequent or renewed license may be issued under this subsection on an annual basis if the department has not adopted regulations in accordance with subsection (e)(1) at least ninety days prior to the date upon which such

subsequent or renewed license would be effective or if the department has adopted regulations pursuant to subsection (e)(1) but has not, at least ninety days after the adoption of such regulations, issued the license pursuant to subsection (e)(6) and has not notified the applicant, in writing, of the specific reason for its denial.

(9) A county or municipality may prohibit the licensing of a cannabis establishment whether licensed by the department, county or municipality, providing the prohibition is approved by a vote of the electorate in a general election during an even numbered year. Grandfather clause.—If any county or municipality prohibits the licensing of any cannabis establishment under this subsection, any license issued prior to the effective date of any such county or municipal prohibition shall continue in full force, be subject to renewal, and in no way be affected by any post-licensing prohibition enacted under this subsection.

(f) Employers, driving, minors, control of property, and federal law.

(1) Nothing in this section is intended to require an employer to permit or accommodate the use, consumption, possession, transfer, display, transportation, sale, or growing of cannabis in the workplace or to affect or repeal the ability of employers to have policies restricting the use of cannabis by employees during work hours.

(2) Nothing in this section is intended to allow driving while impaired by cannabis, nor shall this section prevent the state from criminal penalties pursuant to s. 316.193, Florida Statutes (2016) or as amended.

(3) Nothing in this section is intended to permit the transfer of cannabis, with or without remuneration, to a person under the age of twenty-one or to allow a person under the age of twenty-one to purchase, possess, use, transport, grow, or consume

cannabis, except as otherwise permitted under state law or the Florida Constitution.

(4) Nothing in this section shall prohibit a person, employer, corporation or any other entity who occupies, owns or controls a residency or detention facility, whether public or private, when residence or detention is incidental to the provision of medical, geriatric, educational, counseling, rehabilitation, correctional, or similar services; transient occupancy in a hotel, condominium, motel, rooming house, or similar public lodging, or transient occupancy in a mobile home park; occupancy by a holder of a proprietary lease in a cooperative apartment; or occupancy by an owner of a condominium unit from prohibiting or otherwise regulating the possession, consumption, use, display, transfer, distribution, sale, transportation, or growing of cannabis on or in that property.

(5) Nothing in this section purports to give immunity under federal law for possession, consumption, use, display, transfer, distribution, sale, transportation, or growing of cannabis.

(g) The Florida Cannabis Act's effect on other Florida laws relating to cannabis or marijuana.

(1) Nothing in this section shall be construed to affect or repeal s. 112.0455, Florida Statutes (2016) (Drug-Free Workplace Act) except as stated herein.

(2) Nothing in this section shall be construed to affect or repeal s. 327.38, Florida Statutes (2016) (use of water skis, aquaplane, or similar device from a vessel while under the influence of marijuana).

(3) Nothing in this section shall be construed to limit or extend any privilege, right, or duty on the part of medical cannabis dispensing organizations, qualified patients, physicians, caregivers or any other persons, entities, or activities governed by Florida's Compassionate Use of low-THC Cannabis Act, s. 381.986 et seq., Florida Statutes (2016) or as amended.

(4) The Florida Legislature shall, no later than 6 months from the effective date, revise s. 775.087(2)(a)1(q), Florida Statutes (2016) (actual possession of a firearm or destructive device) to qualify the word "cannabis" to accommodate possession consistent with this section.

(5) The Florida Legislature shall, no later than 6 months from the effective date, revise s. 775.087(3)(a)1(r), Florida Statutes (2016) or as amended (actual possession of a semiautomatic firearm and its high capacity detachable box magazine, or a machine gun) to qualify the word "cannabis" to accommodate possession consistent with this section.

(6) The Florida Legislature shall, no later than 6 months from the effective date, revise s. 812.14(6)(b), Florida Statutes (2016) or as amended (use of utility services to grow marijuana indoors) to accommodate use of utility services consistent with this section.

(7) The Florida Legislature shall, no later than 6 months from the effective date, revise ss. 893.145-893.147, Florida Statutes (2016) or as amended, to qualify the definition of "drug paraphernalia," the determination of paraphernalia, and the use, possession, manufacture, delivery, transportation, advertisement, or retail sale of drug paraphernalia consistent with this section, and shall otherwise revise, Chapter 893, Florida Statutes (2016) (drug abuse prevention and control) as needed to qualify and quantify cannabis possession and use consistent with this section.

(h) Self-executing, severability, conflicting provisions. All provisions of this section are self-executing except as specified herein. All provisions of this section are severable, and, except where otherwise indicated in the text, shall supersede conflicting state statutory, local charter, ordinance, or resolution, and other state and local provisions.

(i) Effective date.  Except as otherwise provided herein, all provisions of this proposed amendment shall be effective as an amendment to the Constitution of the State of Florida on the first Tuesday after the first Monday in January following the election.

## Ballot Title and Summary

The ballot title for the proposed amendment is: "Regulate Marijuana in a Manner Similar to Alcohol to Establish Age, Licensing, and Other Restrictions."  The ballot summary states:

> Regulates marijuana (hereinafter "cannabis") for limited use and growing by persons twenty-one years of age or older.  State shall adopt regulations to issue, renew, suspend, and revoke licenses for cannabis cultivation, product manufacturing, testing and retail facilities.  Local governments may regulate facilities' time, place and manner and, if state fails to timely act, may license facilities.  Does not affect compassionate use of low-THC cannabis, nor immunize federal law violations.

## ANALYSIS

### Standard of Review

Ordinarily, this Court's review of the validity of an initiative petition "is limited to two issues: (1) whether the amendment violates the single-subject requirement of article XI, section 3 of the Florida Constitution, and (2) whether the ballot title and summary violate the requirements of section 101.161(1), Florida Statutes." *Advisory Op. to Att'y Gen. re Indep. Nonpartisan Comm'n to*

*Apportion Legis. & Cong. Dists. Which Replaces Apportionment by Legislature*, 926 So. 2d 1218, 1223 (Fla. 2006).[2]  We "appl[y] a deferential standard of review."  *Advisory Op. to Att'y Gen. re Use of Marijuana for Certain Med. Conditions*, 132 So. 3d 786, 794 (Fla. 2014) (*Medical Marijuana I*).  We invalidate a proposal only if it is shown to be "clearly and conclusively defective."  *Advisory Op. to Att'y Gen. re Amendment to Bar Gov't from Treating People Differently Based on Race in Pub. Educ.*, 778 So. 2d 888, 891 (Fla. 2000).

Here, we conclude that the initiative petition meets the "high threshold" of being "clearly and conclusively defective."  *Advisory Op. to Att'y Gen. re Limits or Prevents Barriers to Local Solar Elec. Supply*, 177 So. 3d 235, 246 (Fla. 2015).  Specifically, the ballot summary is affirmatively misleading and thus fails to comply with section 101.161.

---

2.  Recent legislation amended existing statutes to among other things expand the scope of this Court's review of initiative petitions to include "whether the proposed amendment is facially invalid under the United States Constitution."  Ch. 2020-15, § 2, Laws of Fla.  We have not been asked to, nor do we, address that legislation in this case.

## Section 101.161, Florida Statutes

Section 101.161(1) sets forth certain clarity requirements for ballot titles and summaries. The ballot summary for an initiative petition is limited to seventy-five words, must "be printed in clear and unambiguous language on the ballot," and "shall be an explanatory statement . . . of the chief purpose of the measure." § 101.161(1), Fla. Stat. The ballot title is limited to fifteen words and "shall consist of a caption . . . by which the measure is commonly referred to or spoken of." *Id.* "The purpose of these [statutory] requirements is 'to provide fair notice of the content of the proposed amendment so that the voter will not be misled as to its purpose, and can cast an intelligent and informed ballot.' " *Advisory Op. to Att'y Gen. re Use of Marijuana for Debilitating Med. Conditions*, 181 So. 3d 471, 478 (Fla. 2015) (*Medical Marijuana II*) (quoting *Advisory Op. to Att'y Gen. re Term Limits Pledge*, 718 So. 2d 798, 803 (Fla. 1998)). In determining whether the statutory requirements are satisfied, we "consider two questions: (1) whether the ballot title and summary, in clear and unambiguous language, fairly inform the voters of the chief purpose of the amendment; and (2) whether the language of the ballot title and summary, as written,

will be affirmatively misleading to voters." *Medical Marijuana I*, 132 So. 3d at 797.

Here, we address only one of the issues raised by the opponents of the measure—an issue that is clearly dispositive. Namely, the opponents take issue with the language in the ballot summary that states the proposed amendment would regulate marijuana "for limited use and growing by persons twenty-one years of age or older." They contend that the text of the proposed amendment itself does not limit the personal "use" of marijuana and that the ballot summary therefore affirmatively misleads voters. We agree.

The ballot summary plainly tells voters that the proposed amendment "limit[s]" the personal use—i.e., consumption—of recreational marijuana by age-eligible persons. But the proposed amendment itself does not do so. The relevant provision in the proposed amendment is section (c), titled "Personal use of cannabis." That section provides in part that it shall not be unlawful for an age-eligible person to engage in certain acts including "using . . . cannabis, and cannabis products in quantities reasonably indicative of personal use or for use by household

- 21 -

members." Even if this language, when viewed in isolation, could somehow be argued to establish a *limitation* on personal use in an amount equal to a "quantit[y] reasonably indicative of personal use or for use by household members," any such argument is undermined by the fact that the same section of the proposed amendment further provides that the enumerated quantities "are minimum quantities, subject to increase by state, county, or municipal legislation, but not subject to decrease." In other words, the proposed amendment establishes a quantity *floor* below which an age-eligible person cannot be prosecuted, while at the same time authorizing the state and local governments to permit unlimited personal use of recreational marijuana. And although other sections of the proposed amendment leave open the possibility that, for example, businesses might decide to limit or prohibit the use of marijuana on their property, the proposed amendment itself does not limit the use of marijuana. But the ballot summary tells voters otherwise.

A ballot title and summary "need not explain every detail or ramification of the proposed amendment." *Advisory Op. to Att'y Gen. re Prohibiting Pub. Funding of Political Candidates' Campaigns,*

693 So. 2d 972, 975 (Fla. 1997). But they nevertheless "must be accurate." *Advisory Op. to Att'y Gen. re Protect People, Especially Youth, from Addiction, Disease, & Other Health Hazards of Using Tobacco*, 926 So. 2d 1186, 1194 (Fla. 2006). As we have stated, "[a] proposed amendment must be removed from the ballot when the summary does not accurately describe the scope of the text of the amendment, because it has failed in its purpose." *Detzner v. League of Women Voters of Fla.*, 256 So. 3d 803, 808 (Fla. 2018). The ballot summary here is not accurate. It falsely tells voters that the proposed amendment limits the use of recreational marijuana. Because the proposed amendment itself "does no such thing," it should not be placed on the ballot. *See Advisory Op. to Att'y Gen. re Right to Competitive Energy Mkt. for Customers of Inv'r-Owned Utils.*, 287 So. 3d 1256, 1260-61 (Fla. 2020) (concluding that the ballot summary was affirmatively misleading for "tell[ing] voters that the proposed amendment grants a personal right to 'sell electricity,' when in fact the amendment does no such thing").

The Sponsor offers only a feeble argument in defense of the "limited use" language. The Sponsor begins by reasoning that " 'limited' means not unlimited." By that logic, we should read the

ballot summary as follows: "Regulates marijuana . . . for the not unlimited use . . . by persons twenty-one years of age or older." But even if we were to read the summary in this absurd manner, it would not change the fact that the proposed amendment itself does not limit personal use to some less-than-unlimited amount. In other words, it would be more accurate if the summary stated: "Regulates marijuana . . . for the potentially unlimited use . . . by persons twenty-one years of age or older." The summary instead misleadingly tells voters that the proposed amendment limits the use of marijuana.

> The remainder of the Sponsor's reasoning is as follows:

> Unlike the purchase of other agricultural products, adult-access to marijuana is subject to an age limit (Petition (c) and (c)(5), p. 3); possession limit (Petition (c)(1), p. 3); a growing limit (Petition (c)(2), p. 3); a gifting limit (Petition (c)(3), p. 3); and limits on the time, place and manner of its use (Petition (e)(5)(a) and (c), p. 7). Even included in the amendment is the right for counties and municipalities to opt out of adult-use cannabis licensing completely within their jurisdiction. This can be done by setting the limit on adult-use cannabis facilities to zero (Petition (e)(9), p. 8).

Even under a deferential standard of review, we cannot adopt this flawed reasoning. As an initial matter, the initiative's "age limit" is clearly not the "limited use" contemplated by the ballot summary.

- 24 -

Indeed, the summary tells voters that the measure will regulate marijuana "for limited use . . . by persons twenty-one years of age or older." The summary thus informs voters that the initiative imposes use limitations *on* age-eligible persons, not that the age limitation is itself a "use" limitation. Secondly, "use" cannot be synonymous with "possession," "growing," or "gifting." Indeed, the initiative separately addresses those activities. And lastly, the Sponsor's assertion that sections (e)(5)a. and (e)(5)c. of the initiative impose "limits on the time, place and manner of [marijuana] use" finds no support in the text of those sections. Section (e)(5)a., for example, contemplates the future enactment of local ordinances or regulations "[g]overning the time, place, manner, and number of cannabis establishment operations." That section thus addresses commercial facilities, not personal use of marijuana. The Sponsor's inability to point to anything in the text of the measure that could credibly support the "limited use" language in the summary leaves no doubt that the summary is affirmatively misleading.

## CONCLUSION

We conclude that the language in the ballot summary indicating that the proposed amendment "[r]egulates marijuana . . .

for limited use . . . by persons twenty-one years of age or older" is affirmatively misleading and fails to comply with section 101.161(1), Florida Statutes. Accordingly, the proposed amendment should not be placed on the ballot.

It is so ordered.

CANADY, C.J., and POLSTON, MUÑIZ, COURIEL, and GROSSHANS, JJ., concur.
LAWSON, J., dissents with an opinion, in which LABARGA, J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LAWSON, J., dissenting.

I respectfully dissent. I acknowledge that this is a close case and that the dispositive legal issue here is materially different than that in *Advisory Opinion to the Attorney General re: Adult Use of Marijuana* (*Adult Use*), 46 Fla. L. Weekly S87 (Fla. Apr. 22, 2021), in which I also dissented. Although the majority in both cases found the summaries to be affirmatively misleading, the ballot summary at issue in *Adult Use* did not mislead at all with respect to the change in Florida law that would occur if the amendment had been adopted. Rather, the majority found that the summary misled by not explaining that the amendment, if passed, would leave federal

- 26 -

statutes outlawing marijuana use unchanged. *See Adult Use*, 46 Fla. L. Weekly at S90 (Lawson, J., dissenting). Because our precedent unequivocally states that it is not "required that a ballot summary inform voters as to the current state of federal law [nor] the impact of a proposed state constitutional amendment on federal statutory law," *Advisory Op. to Att'y Gen. re Use of Marijuana for Certain Med. Conditions*, 132 So. 3d 786, 808 (Fla. 2014), I found the majority's decision in *Adult Use* to be irreconcilable with our precedent and the laws governing our review of citizen initiative proposals. *See Adult Use*, 46 Fla. L. Weekly at S90-92 (Lawson, J., dissenting).

Here, by contrast, the majority properly analyzes the ballot summary to assure that it accurately describes the change in Florida law that would occur if the amendment passed. Furthermore, I agree with the majority that summarizing this proposed amendment as providing "for limited use and growing" of marijuana could be viewed as misleading because "use" could reasonably be understood to mean "consumption" and the amendment places no limitation on the amount of marijuana that a

user could consume, as explained by the majority. *See* Majority op. at 21-22.

However, we must always read the ballot title and summary together if doing so would affect our legal analysis. *See Advisory Op. to Att'y Gen. re Voluntary Universal Pre–Kindergarten Educ.*, 824 So. 2d 161, 166 (Fla. 2002) ("[T]he ballot title and summary may not be read in isolation, but must be read together in determining whether the ballot information properly informs the voters."). The ballot title in this case reads: "Regulate Marijuana in a Manner Similar to Alcohol to Establish Age, Licensing, and Other Restrictions." And the amendment itself details the ways that marijuana use would be regulated similar to Florida's current regulations affecting alcohol use. Therefore, reading the title and summary together, "limited use" could also be understood as a reference to the regulations disclosed in the aptly descriptive title.

Read together in this way, the ballot title and summary do not disguise the measure "as something else," *Askew v. Firestone*, 421 So. 2d 151, 156 (Fla. 1982), or " 'hide the ball' as to the amendment's true effect," *Armstrong v. Harris*, 773 So. 2d 7, 16 (Fla. 2000), and are not "clearly and conclusively defective,"

*Advisory Op. to Att'y Gen. re Right to Treatment & Rehab. for Non-Violent Drug Offenses*, 818 So. 2d 491, 494 (Fla. 2002) (quoting *Floridians Against Casino Takeover v. Let's Help Florida*, 363 So. 2d 337, 339 (Fla. 1978)). *See Right to Treatment & Rehab. for Non-Violent Drug Offenses*, 818 So. 2d at 494, 498-99 ("This Court has no authority to inject itself in the process [by blocking a proposed amendment from appearing on the ballot], unless the laws governing the process have been 'clearly and conclusively' violated," *id.* at 498-99, thereby rendering the proposal "clearly and conclusively defective," *id* at 494 (quoting *Floridians Against Casino Takeover*, 363 So. 2d at 339)). For this reason, I believe that our constitutional responsibility must be discharged by approving this measure for placement on the ballot.

LABARGA, J., concurs.

Original Proceeding – Advisory Opinion – Attorney General

Ashley Moody, Attorney General, Amit Agarwal, Solicitor General, and Jeffrey Paul DeSousa, Chief Deputy Solicitor General, Tallahassee, Florida,

    for Petitioner

Edward M. Wenger and Mohammad O. Jazil of Hopping Green & Sams, P.A., Tallahassee, Florida,

for Interested Party, Florida House of Representatives

Jason Gonzalez, Daniel Nordby, Benjamin Gibson, Amber Stoner Nunnally, and Rachel Procaccini of Shutts & Bowen LLP, Tallahassee, Florida,

for Interested Parties, Florida Chamber of Commerce, Drug Free America Foundation, National Drug-Free Workplace Alliance, and Save Our Society From Drugs

Michael C. Minardi of Minardi Law, Tampa, Florida; and William R. Wohlsifer of William R. Wohlsifer, PA, Hudson, Florida,

for Interested Party, Sensible Florida, Inc.